**Robert WEBB, Individually and as next friend for his minor children, et al., Petitioners,**

v.

**Dr. Kenneth JORNS et al., Respondents.**

No. B–3132.

Supreme Court of Texas.

Nov. 15, 1972.

Rehearing Denied Jan. 10, 1973.

John H. Holloway, Houston, for petitioners.

Cantey, Hanger, Gooch, Cravens & Munn, Sloan Blair, Richard L. Griffith and William B. David, Fort Worth, Brown, Crowley, Simon & Peebles, Richard U. Simon, Jr., Fort Worth, for respondent.

POPE, Justice.

Robert Webb, individually and as next friend for his minor children, brought this malpractice suit against Doctors General Hospital, Mrs. Irys Eakin, Dr. Kenneth L. Jorns, and Dr. E. D. Olcott. Mrs. Webb's parents were also joined as plaintiffs. The action arose out of the death of Mrs. Ella J. Webb thirteen minutes after Mrs. Eakin commenced the administration of an anesthetic in preparation for a surgical procedure. After a pre-trial hearing on October 28, 1970, the trial court dismissed Doctors General Hospital with prejudice. Thereafter, on January 18, 1971, the court rendered judgment upon an instructed verdict for the other three defendants and the plaintiffs appealed. The court of civil appeals ruled that the plaintiffs did not timely perfect an appeal from the pre-trial order dismissing the hospital, plaintiffs' notice of appeal was insufficient as to the order dismissing the hospital, and the instructed verdict for the other three defendants was proper. 473 S.W.2d 328. In our opinion, the judgments of the courts below should be reversed and the cause should be remanded to the trial court for trial.

The courts below erred in holding that plaintiffs did not timely appeal from the order dismissing the hospital. The order of October 28, 1970, dismissing the hospital was an interlocutory order, because it did not dispose of all parties and issues in the pending suit. Since the trial court

did not sever the cause against the hospital from the rest of the case, the interlocutory judgment did not become a final judgment until it was merged into the final judgment which the court rendered on January 18, 1971, disposing of the whole case. Zachry Co. v. Thibodeaux, 364 S.W.2d 192 (Tex. 1963); McEwen v. Harrison, 162 Tex. 125, 345 S.W.2d 706 (1961). Plaintiffs properly gave notice of appeal on the date of the final judgment.

■ The court of civil appeals also erred in its holding that plaintiffs' notice of appeal was inoperative as to the hospital. The final judgment rendered on January 18, 1971, stated that plaintiffs "in open court excepted to this judgment and now give notice of appeal to the Court of Civil Appeals . . . ." The court of civil appeals was of the opinion that the notice of appeal did not specify an intent to appeal from the earlier interlocutory order. The notice stated the number and style of the case, the court in which the case was pending, and that plaintiffs desired to appeal from the judgment in the case. The notice met the requirements of Rule 353(b), Tex. R.Civ.P. We agree with the commentary following Rule 353, Vern.Tex.Rules Annot., which says: "Under Rule 353, as amended in 1962, it appears clear that the entire case will be brought up on appeal unless the appellant specifically limits the scope of the appeal by giving the notice required therein." We accordingly reinstate the appeal from the order which dismissed the hospital with prejudice. Since that appeal concerned a law question, we shall pass upon the point rather than remand the case to the court of civil appeals for its decision.

The trial court also erred in dismissing the hospital as a defendant. Plaintiffs' cause of action arose on October 7, 1966. They filed their original petition on March 21, 1968, and named three individuals and Doctors General Hospital as defendants. On February 9, 1970, they filed an amended original petition, again naming the three individuals as defendant, but they wholly omitted the hospital as a defendant. Someone, at some unknown time, had written in ink beneath the other three named defendants: "Doctors General Hospital Inc. of Tarrant County, Texas." Copies of the pleading which were sent to the other defendants did not contain those inked-in words. The amended pleading asserted no cause of action against the hospital. On April 3, 1970, plaintiffs filed their second amended petition which restored the hospital as a defendant and that pleading asserted a cause of action against it. The hospital then filed its motion to be dismissed which the trial court granted.

■ The court, by its order dismissing the hospital, correctly followed the rule that the amended petition, by omitting a defendant, operated as a voluntary dismissal as to that party. Ridley v. McCallum, 139 Tex. 540, 163 S.W.2d 833 (1942); Brennan v. Greene, 154 S.W.2d 523 (Tex. Civ.App.1941, writ ref'd). The trial court erred, however, in dismissing the cause "with prejudice." The voluntary dismissal of the hospital did not prevent plaintiffs from refiling an action against the hospital, and the phrase, "with prejudice," improperly barred such an action. Crofts v. Court of Civil Appeals, 362 S.W.2d 101 (Tex.1962); 4 R. McDonald, Texas Civil Practice §§ 17.15, 17.17 (Rev. ed. 1971). Some of the plaintiffs were minors against whom the statute of limitations may not have run, and the dismissal "with prejudice" as to them was in error. See McCrary v. City of Odessa, 482 S.W.2d 151 (Tex.1972). We reverse the judgment of the trial court which dismissed the plaintiffs' action against the hospital "with prejudice." Upon remand the court may consider which plaintiffs may be barred by limitations.

### On The Merits

The courts below erred in ruling that plaintiffs failed to make a prima facie malpractice case against Mrs. Irys Eakin or the two physicians. Mrs. Webb, a thirty-year-old patient, entered the Doctors Gen-

eral Hospital in Fort Worth for the repair of a diaphragmatic hernia. She needed the operation, but there was no emergency situation. Mrs. Eakin, a nurse anesthetist, commenced administering the anesthetic and thirteen minutes later, the patient expired. Plaintiffs alleged a number of grounds of negligence on the part of the anesthetist, among which were (1) the improper mixture of Halothane with oxygen and nitrous oxide, (2) improper use of the anesthesia machine, and (3) improper monitoring of the patient during the time she was inspiring the gas.

Plaintiffs called a Dr. Dannemiller as their expert medical witness. He testified that in reasonable medical probability, Mrs. Webb's cardiac arrest was caused either by an overdose of Halothane or a lack of proper oxygenation of the patient. He testified that Mrs. Eakin should have set the anesthesia machine so there would have been a flow rate of the gas mixture of at least four liters per minute. Instead, the proof showed that the flow rate was only two liters per minute which would magnify the vaporization of the Halothane and intensify its strength. That drug was described as a very potent one. He testified, when asked which anesthetic agent constituted the overdose, "Well, on probability again, I would say that Halothane was probably the agent." Dr. Dannemiller testified further that the machine setting did not conform to the manufacturer's instructions, and that it was necessary to compensate for the temperature factor which can cause the concentrations of Halothane to vary from double or half that which is intended. Mrs. Eakin had not considered room temperature as a factor in the strength of the gas. She testified that she was not able to calculate the concentration of Halothane to be administered by the machine and that she forgot that temperature had any effect. Dr. Dannemiller said a two degree variance of temperature can change the drug concentration seven percent.

Dr. Dannemiller narrowed the probable causes of the death to two factors: (1) the patient was either not getting adequate oxygen, or (2) the cardiac arrest had gone unnoticed for a period of three to five minutes. When asked whether he could state with certainty that either of those two things caused the death of the patient, he replied, "I can't add another possibility."

Plaintiffs also proved that proper monitoring while the patient was inspiring the anesthetic would require the anesthetist to take blood pressure readings at two minute intervals rather than at three or four minute intervals as proved. Dr. Dannemiller said the depth of the anesthesia is best indicated by blood pressure readings, but if the reading intervals are too far apart, the anesthetist can get well behind the patient in assessing the status of the anesthetic and its effect on the patient. He also expressed the opinion that the accepted technique and standard is to take readings at two minute intervals, because the three to five minute intervals would permit a cardiac arrest to occur at a time too remote to reverse the arrest and resuscitate the patient.

The defendants urge that the evidence failed to establish causation for two reasons. They say that there was proof of other possible non-negligent causes of Mrs. Webb's death. They say that Dr. Dannemiller failed to meet the community standard test as a predicate for his testimony and that all of it must be disregarded. Dr. Dannemiller eliminated all possible causes of death except two and then said that both of them caused the death. The court of civil appeals says that another possible cause was Mrs. Webb's allergic reaction to Halothane. Dr. Gwodz, the physician who performed the autopsy, mentioned this as a possible cause, but he also, when asked the direct question whether there was an allergic reaction, replied, "No allergic reaction."

The fact that there may have been conflicts between Dr. Dannemiller's and

some of Dr. Gwodz's testimony concerning other possible causes does not defeat plaintiffs' prima facie cause of action. It is an old and familiar rule that the fact finder may resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952); Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792 (1951); Rose v. O'Keefe, 39 S.W.2d 877 (Tex.Com.App.1931). 1 McCormick and Ray, Texas Law of Evidence § 3 (1956).

■ Plaintiffs offered direct evidence which, if believed, eliminated all but two possible causes of Mrs. Webb's death and both of them were caused by the negligence of the anesthetist. Contrary to the defendants' arguments, Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949), is not authority which supports the judgment that plaintiffs take nothing. In the cited case two medical experts testified that a child's injured arm may have been caused by the doctor's negligence in binding the arm too tightly or the arm condition could have been caused at the time of the original accident in which the doctor had no part. The case holds that reasonable medical certainty is not proved when there is proof of two possible causes, one of which is the result of negligence and the other is not. Similar holdings were made in Lenger v. Physician's General Hospital, Inc., 455 S.W.2d 703 (Tex.1970), and Hart v. Van Zandt, 399 S.W.2d 791 (Tex.1966). The difference between those cases and this one is that the medical expert testified that in reasonable medical probability Mrs. Eakin was the author of two causes either of which caused Mrs. Webb's death.

Defendants urge that all of Dr. Dannemiller's testimony should be disregarded because he failed to meet the community standard rule which is required of a non-treating expert. We do not agree. Mrs. Webb's death occurred in a Fort Worth hospital and plaintiffs' medical expert, Dr. Dannemiller, was practicing at Lackland

Air Force Base in San Antonio. He was a lieutenant colonel in the Air Force. He was graduated from Yale Medical School after which he did further study of anesthesiology at Yale from 1959 to 1961. Since that time he has been in the active clinical practice of anesthesia which subject he also teaches to doctors and nurses. He recognized that procedures used by nurse anesthetists, such as Mrs. Eakin, and anesthesiologists differ and also that practices differ in certain localities. Dr. Dannemiller also testified that there are certain minimum safe and accepted practices and procedures that cannot vary in any locality or between nurses and anesthesiologists, since the human tolerance to certain conditions are uniform and apply to all persons wherever they may be. He said that all teaching of anesthetics involves standards, below which no technician or practitioner should fall, and that Mrs. Eakin's negligent acts did not conform with those minimum standards.

■ The community standard rule does not require a small office of a rural medical practitioner to possess either the skills or equipment of a sophisticated clinic; but the standard demands, at least, that one must exercise ordinary care commensurate with the equipment, skills and time available. A trial court has discretion in the administration of the community standard. Any other treatment of the rule would mean that some communities would be measured by standards which fall beneath those universally regarded as ordinary medical standards. The trial court did not abuse its discretion in the admission of Dr. Dannemiller's testimony.

We hold that plaintiffs proved a prima facie cause of action against the nurse anesthetist. The physicians have not questioned but concede that they are subject to vicarious liability in the event of a finding of liability on the part of persons under their supervision in the operating room. See Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933 (1954); McKinney v. Tromley, 386 S.W.2d 564 (Tex.Civ.App.1965, writ

**412**

ref'd n. r. e.); Annot., Surgeons-Nurses Negligence, 12 A.L.R.3d 1017 (1967).

Plaintiffs also insist that they proved independent grounds of negligence as to the two physicians. They say that the physicians were negligent in several particulars in their efforts to reverse the cardiac arrest. Since the cause must be reversed as to all of the defendants for the reasons expressed above, it is unnecessary to comment about the state of the evidence as it relates to those other points.

The judgment of the court of civil appeals dismissing plaintiffs' appeal from the trial court's order dismissing Doctors General Hospital, Inc., is reversed and the appeal is reinstated as to that defendant. The judgment of the trial court dismissing Doctors General Hospital, Inc., and the judgment of the trial court and the court of civil appeals as to defendants, Mrs. Irys Eakin, Dr. Kenneth L. Jorns, and Dr. E. D. Olcott, are reversed and the entire cause is remanded to the trial court.