NO. 07-99-0197-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 3, 2000

_____


TERESO MARTINEZ HUERTA, APPELLANT

V.

JAMES CADDELL, APPELLEE


_____

FROM THE 72ND DISTRICT COURT OF CROSBY COUNTY;

NO. 5856; HONORABLE WILLIAM R. SHAVER, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Presenting two issues which, he says, mandate reversal, appellant Tereso Martinez Huerta (Huerta) challenges a judgment in favor of appellee James Caddell (Caddell). In his issues, Huerta argues the trial court erred in 1) transferring venue of his case from Harris County to Crosby County, and 2) refusing to permit testimony from his expert witness concerning the condition of a vehicle at the time of the collision giving rise to the underlying suit.

A brief discussion of the factual and procedural background of this appeal is necessary to a proper consideration of the issues raised. In 1988, Huerta was employed by Caddell in Crosby County. In 1991, Caddell provided a 1980 model Ford truck for Huerta's use in his employment. On the morning of December 5, 1992, when the weather was very cold and there was snow and ice on the ground, Huerta lost control of the vehicle, it slipped off the pavement and overturned. Huerta was thrown clear of the vehicle and suffered injuries which resulted in his becoming quadriplegic.

On August 24, 1994, Huerta filed suit in Harris County against Caddell, his brother Delton, and the Ford Motor Company. In his petition, he alleged there were numerous defects in the truck furnished him, including, *inter alia*, allegations that the seat belts and speedometer did not work, the steering was very loose, and the brakes, tires, and windshield wipers were in very poor condition, all of which contributed to the accident. Huerta asserted that the Caddells were guilty of negligence and negligence *per se*. He also asserted products liability counts against Ford.

On September 20, 1994, Caddell sought a change of venue to Crosby County. In February 1995, Huerta non-suited Delton Caddell, and, in May 1995, Huerta sought dismissal of the suit as to Ford. This resulted in the trial court rendering a May 19, 1995 "Partial Final Judgment" that Huerta take nothing insofar as his claims against Ford were involved. However, nothing in the judgment provided for a severance of the claims against Ford from the remainder of the suit.

On July 7, 1995, after the disposition of the claims against Ford, Caddell filed a supplemental motion seeking a venue change to Crosby County. As grounds for this motion, Caddell cited the resolution of the claims against the Ford Motor Company, its dismissal from the suit, reiterated that

the accident happened in Crosby County and pointed out that the remaining parties lived in Crosby County. He also cited the court's decision in *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709 (Tex. App.--Dallas 1995, no writ), as authority for the proposition that Huerta had waived his choice of venue by his "voluntary dismissal of the former defendant, Ford Motor Company."

Huerta responded to the supplemental motion by citing section 15.061 of the Civil Practice and Remedies Code (repealed) which provided that when proper venue was established as to one defendant, venue was proper as to all defendants. He argued that if venue was proper in the first instance, a subsequent change in parties does not affect the propriety of that venue. He also argued that Caddell's failure to obtain a ruling on his motion to change venue for more than a year after it was filed waived any complaint. On July 20, 1995, the trial court granted Caddell's motion to change venue and transferred the proceedings to Crosby County. The case proceeded to trial in Crosby County and resulted in a jury verdict and judgment in favor of Caddell. Hence this appeal.

As we have noted, in his first point, Huerta challenges the trial court order transferring venue to Crosby County. In deciding this challenge, we must first consider relevant portions of the Civil Practice and Remedies Code.[1] At the time Huerta filed his original petition, the general venue rule was set out in section 15.001 and provided:

> Except as otherwise provided by this subchapter [A] or Subchapter B or C, all lawsuits shall be brought in the county in which all or part of the cause of action accrued or in the county of defendant's residence if [the] defendant is a natural person.

---

[1]All statutory references are to the Civil Practice and Remedies Code unless otherwise noted.

The only applicable exceptions in subchapter B or subchapter C are section 15.033, which addresses claims of breach of warranty by a manufacturer, and section 15.037, which governs venue in cases involving foreign corporations. Both sections provide that venue is proper in any county in which all or any part of the cause accrued, or in any county in which the company may have an agency or representative. Former section 15.061 provided that when a court has venue over a claim against one defendant, it has venue for claims against all properly joined defendants unless otherwise provided by one of the mandatory venue provisions of Subchapter B. Although significant changes were made in these provisions by the 74th Legislature, those changes were not applicable in cases such as this one, which were pending at the time of the amendments. *See* Act of May 18, 1995, S.B. 32, § 11, 74th Leg. R.S., 1995 Tex.Gen.Laws 978, 980.

In arguing that the venue change was improper, Huerta relies upon the cited sections of the Civil Practice and Remedies Code and the uncontested allegation in his petition that at the time the suit was filed, Ford had an agent in Harris County. He also places significant reliance upon the court's opinion in *Wilson v. Texas Parks and Wildlife Dept.*, 886 S.W.2d 259 (Tex. 1995), in which it held that it was error to change venue if the plaintiff filed suit in a county of proper venue, even if the county to which the case was transferred was also one in which venue would have been proper.[2]

---

[2]Parenthetically, this holding may have limited applicability in cases governed by current Chapter 15 of the Civil Practice and Remedies Code which authorizes such a transfer for "the convenience of the parties and witnesses and in the interest of justice." Tex. Civ. Prac. & Rem. Code Ann. § 15.002(b)(2) (Vernon Supp. 2000).

Huerta also cites *Bleeker v. Villareal*, 941 S.W.2d 163, 169 (Tex. App.--Corpus Christi 1996, writ denied). In *Bleeker*, the court held that under Chapter 15 of the Code, in a case involving several defendants, to successfully challenge venue, the challenging defendant must 1) show that venue was not permissible in the county of suit for any defendant, 2) show a mandatory venue provision required transfer to another county, 3) establish that the co-defendant whose presence made venue proper was improperly joined, or 4) obtain a severance. *Id.* at 169.

Huerta posits that the judgment in favor of Ford does not justify the transfer because there was no severance of the claims against Ford and "[n]owhere in the Texas Rules of Civil Procedure relating to venue proceedings is it contemplated or provided that a subsequent deletion of co-defendants renders originally maintainable venue invalid." Absent a severance, he reasons, Ford remained a party to the suit and the trial court could have withdrawn the judgment at any time before the rendition of final judgment in the suit. In support of that proposition, he cites *Webb v. Jorns*, 488 S.W.2d 407, 408-09 (Tex. 1972), in which the court held that because a dismissal order did not dispose of all the parties to a suit, it was interlocutory until a final judgment in the case was entered; thus, a notice of appeal from the dismissal given on the date of the final judgment was timely.

In response, Caddell argues that Huerta's "voluntary dismiss[al] of all claims against the venue defendants with prejudice" was sufficient to justify the transfer. He also contends that Huerta's failure to present any evidence of Ford's liability at trial showed that Huerta sued Ford "not because he had a legitimate claim against Ford, but solely to provide venue in Harris County."

5

ANALYSIS

The appropriate standard of review for a venue determination is that set out in section 15.064(b), which provides, "[i]n determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits." Thus, under this somewhat unusual standard, evidence adduced at the trial on the merits can show that the prima facie proof supporting venue was misleading or simply wrong. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993).

Two cases illustrate the application of this principle. They are *Pines of Westbury, Ltd. v. Paul Michael Const., Inc.,* 993 S.W.2d 291 (Tex.App.--Eastland 1999, no writ), and *ACF Industries v. Carter*, 903 S.W.2d 423 (Tex.App.--Texarkana 1995, writ dism'd). In *Pines of Westbury*, the trial court granted summary judgment in favor of the only defendant whose presence made venue in Dallas County proper. The opinion does not discuss whether the claims against that defendant were severed, but it held that the summary judgment in favor of that defendant destroyed proper venue in Dallas County and made the trial court's denial of another defendant's motion to transfer improper. 993 S.W.2d at 293.

Similarly, in *ACF Industries,* after initially overruling a defendant's motion for change of venue, the trial court subsequently directed a verdict for the venue defendant. In reversing the judgment, the appellate court reviewed all the evidence and noted that the "evidence as a whole may show that the *prima facie* proof was misleading or wrong," concluded that the trial court's subsequent action was correct. 903 S.W.2d at 424.

6

Caddell also cites *Acker v. Denton Publishing Co.*, 937 S.W.2d 111 (Tex.App.--Fort Worth 1996, no writ), in which the trial court granted a motion to transfer venue based upon the uncontroverted affidavits of the venue defendant showing he was not a proper defendant. However, that case differs from this one in that in this case, unlike the defendant in *Acker*, neither Caddell or Ford challenged the *prima facie* venue facts alleged in Huerta's petition. *See* Tex. R. Civ. P. 87.3(a) (requiring the trial court to accept as true all uncontroverted venue facts in the plaintiff's petition). Even so, the *Acker* court did apply the rule that a reviewing court must review the entire record in determining whether the trial court's action on a motion to change venue was proper.

Even though Huerta is technically correct that the Rules of Civil Procedure do not address the effect of subsequent evidence or changes in parties on venue decisions, as these cases show, that particular issue is governed by section 15.064(b) of the Civil Practice and Remedies Code rather than the Rules of Civil Procedure. Huerta's failure to present any evidence pertaining to liability on Ford's part mandates the conclusion that, under the record as a whole, Ford was not a proper party, regardless of whether it was still a named party to the suit. *Pines of Westbury*, 993 S.W.2d at 293; *ACF Industries*, 903 S.W.2d at 424. Thus, even if such evidence existed, it is not shown in the record and we are bound by the record before us. *Ruiz*, 868 S.W.2d at 758; Tex. Prac. & Rem. Code Ann. § 15.064(b). Huerta's first point is overruled.

In his second point, Huerta argues the trial court erred in excluding the testimony of his expert witness, Milton Curtis Franke. Huerta sought to introduce Franke's testimony on the condition of the truck at the time of the accident. Caddell objected to the admission of the expert's

7

testimony on the grounds that Huerta had failed to properly designate Franke as an expert witness in his response to interrogatories and, further, that he was not qualified as an expert.

At a hearing outside the presence of the jury to determine the admissibility of his testimony, Franke testified that he obtained an engineering degree from Texas A & M University in 1960 and then worked for the Air Force for 30 years investigating crashes and mechanical failures. During that time he also built and operated race cars. After leaving the Air Force, he had worked with an organization known as the "Analytical Group" doing similar work for nine years. Franke said he had examined the truck in late 1996 and, based upon the mechanical condition of various portions of the truck at the time of his examination, gave his conclusions as to how those conditions affected its operation at the time of the accident. Those defects included grease and worn brake shoes on one of the rear brakes (the brake shoes on the other side were missing), the absence of a brake pad on one front brake, an excessively thin front brake rotor, missing gear teeth on the speedometer gear, a loose mounting of the right rear shock absorber and the absence of a rubber coupling in the steering system.

In explaining the effect of these conditions on the operation of the truck, he opined that the presence of grease on one rear brake would cause the brakes to operate unequally, the absence of a brake pad on one front brake would make its operation "erratic," the missing teeth on the speedometer gear would prevent the speedometer from operating, and the absence of a rubber coupler in the steering shaft would result in excessive play in the steering wheel. When asked if the

8

condition of the truck was the proximate cause of the accident, his reply was that "it was very instrumental in the accident."

During his cross-examination, Caddell emphasized the portions of Franke's written report referencing several components missing at the time of his inspection, but which he described as "of utmost importance" in determining if the condition of the vehicle contributed to the collision which injured Huerta. Among the missing parts were parts of the steering system, which were apparently removed by Caddell for use on other vehicles. Caddell also directed the judge's attention to the fact that Franke's written report made no mention of defects in the steering system, nor did it refer to the missing rubber coupler. Parenthetically, neither Franke's report nor the photographic exhibits from the hearing are included in the record before us.

At the conclusion of the hearing, the trial court overruled Caddell's objection to the designation of Franke, but excluded his testimony with the comment that "he has excellent qualifications, but nearly all of this testimony I have heard this morning is based on subjective assumptions. And I will rule that he is not qualified to testify as an expert, and that is the ruling of the court."

Citing cases such as *E.I. duPont de Nemours v. Robinson*, 923 S.W.2d 549 (Tex. 1995), Caddell defends the trial court's ruling by opining that "[c]learly the trial court was ruling that [Franke's] testimony did not meet the reliability test in *Robinson*." However, the court's statement of its reasoning is not clear and is really self-contradictory. Even so, in our review, we must consider

the propriety of the ruling, not the reason given for making it. *See Guaranty County Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986).

The admission of expert testimony is governed by Texas Rule of Evidence 702. That rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Rulings on the admissibility of expert witness testimony are within the trial court's discretion and will not be disturbed absent a clear abuse of that discretion. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985).

After the adoption of Rule 702, our courts of appeal had taken different views as to the trial court's role in determining the admissibility of such testimony. Some saw the trial court's sole duty as determining whether the witness was qualified as an expert while others also required the court to assess the reliability of the scientific principles upon which the testimony was based. *Id.* Because of this, in *Robinson*, the court undertook to clarify the trial court's role in applying the rule.

In the course of its discussion, the *Robinson* court recognized the tremendous growth in the use of expert testimony, the deference jurors often give to such testimony, and the resulting inherent

risks in permitting experts to give opinions without limitation. *Id.* at 553. In considering this deference, the court explicated, "it is especially important that trial judges scrutinize proffered evidence for scientific reliability when it is based upon novel scientific theories." *Id.* at 554.

Following the teaching of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the court commented that Rule 702 not only requires that an expert be qualified, but that the testimony he seeks to give be relevant to the issues in the case, as well as being based upon a reliable foundation. 923 S.W.2d at 556. It went on to hold "[i]n order to constitute scientific knowledge which will assist the trier of fact, the proposed testimony must be relevant and reliable." *Id.* The relevancy requirement is consistent with the provision in Texas Rule of Evidence 402 that evidence that is not relevant is not admissible. With regard to reliability, the decision articulated the responsibility of the trial court in evaluating scientific evidence, with an emphasis on that responsibility in evaluating novel scientific theories. *Id.* at 557.

In this case, the evidence Huerta sought to introduce was essentially technical rather than scientific. However, that difference is not material. In *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713 (Tex. 1998), the court had occasion to explicate the trial court's role in considering the admission of non-scientific expert testimony as well as scientific evidence. In doing so, it noted that "[n]othing in the language of [Rule 702] suggests that opinions based upon scientific knowledge should be treated any differently than opinions based on technical or other specialized knowledge. It would be an odd rule of evidence that insisted that some expert opinions be reliable but not others. All expert testimony should be shown to be reliable before it is admitted." *Id.* at 726. Citing

11

*General Electric v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), the *Gammill* court also instructed that expert evidence "does not meet the reliability requirement if there is too great an analytical gap between the data and the opinion expressed." *Gammill*, 972 S.W.2d at 727. It also commented that a trial court's determination as to reliability is within its discretion not to be reversed by an appellate court absent an abuse of discretion. *Id.*

Franke's testimony can be divided into three distinct categories: 1) his description of the condition of various components of the truck at the time he examined them; 2) his opinion as to how those conditions affected the operation of the truck; and finally, 3) his opinion as to how the condition of those components did or did not contribute to causing the collision that injured Huerta.

Franke was clearly qualified by his experience to examine the truck and give testimony on the condition in which he found the various components. However, the trial court could reasonably question the relevance of that testimony because it described their condition in 1996, some four years after the collision in question. Although some of the components, such as the speedometer gear, were sealed and not subject to alteration or deterioration, the removal of numerous suspension and steering components raises a question as to the alteration or damage to those remaining. The trial court might also have reasonably questioned the reliability of Franke's testimony on the "excessively thin" front brake rotor because this observation appeared to be wholly subjective and was not based upon measurement of the rotor or reference to the minimum thickness specified by the manufacturer. Parenthetically, although there were alterations to the truck performed by, or at the direction of, Caddell, Huerta did not seek an instruction on the doctrine of spoliation.

Again, while Franke might have been qualified to give his opinion on how the condition of the components he inspected could have affected the operation of the vehicle, that does not immunize that opinion from the relevance and reliability requirements of Rule 702. The inferential gap between Franke's testimony concerning the missing teeth on the speedometer gear and his conclusion that because of those missing teeth, the speedometer would not work is so small as to require the trial court to find that conclusion reliable. The same is true as to the missing rubber coupler in the steering shaft. However, there is a much greater gap concerning Franke's testimony about the operation of the brakes. His opinion that the absence of a brake pad would cause "erratic" operation was not supported by any empirical testing or personal experience with that type of condition. Parenthetically, the testimony also showed that some of the rear brake shoes were missing at the time of his inspection. In sum, within the exercise of its reasonable discretion, the trial court could reasonably have concluded that the proffered testimony about these components was unreliable.

The greatest inferential gap in Franke's proposed testimony, however, is its total failure to explain how, or by what chain of events, the defects he found in the truck contributed to the accident. Franke's conclusion that the condition of the truck was "very instrumental" to the accident provides no assistance to the jury in making its necessary factual determination, but merely requires it to defer to his conclusion. Without a sufficient connection between the condition of the vehicle at the time Franke examined it and the condition of the truck at the time of the accident, the trial court could reasonably have concluded Franke's testimony was not sufficiently relevant to justify its admission. Accordingly, the trial court did not abuse its discretion and Huerta's second issue is overruled.

13

Accordingly, there being no reversible error shown, the judgment of the trial court is affirmed.

John T. Boyd
Chief Justice

Do not publish.