TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00520-CV






William A. Brown, Jr., Appellant


v.


Ann Lenora Brown and Ann S. Brown, Appellees







FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT

NO. 2000V-174, HONORABLE DAN R. BECK, JUDGE PRESIDING






 Several years after the death of her father, appellee Ann Lenora Brown filed suit
seeking to partition family lands she held in co-tenancy with her mother Ann S. Brown and her
brother William A. Brown, Jr. (1) The parties participated in two mediations regarding the disposition
of the various tracts of land, signing a settlement agreement after each mediation session. Under the
agreements, Mother received the 126-acre homestead tract, Daughter received two tracts of land
totaling about 140 acres, and Son received a 176-acre tract plus $16,000 and his mediation expenses. 
After the second mediation agreement was signed but before it was incorporated into a judgment,
Son objected to Mother's reservation of her mineral interest in the tract conveyed to Son and argued
that the second agreement was procured by fraud, deceit, or mistake. The district court found that
the two agreements were enforceable as Rule 11 agreements, see Texas Rules of Civil Procedure 11, (2)
and signed a judgment partitioning the family tracts and ordering the parties to execute the necessary
deeds to accomplish the partition detailed in the agreements. Son appeals, contending that he never
agreed to Mother's reservation of her mineral interest in the 176-acre tract he received.


Factual Background

 After Daughter filed her suit seeking the partition of various family lands, the parties
mediated their rights to the individual tracts. The parties attended a mediation session in February
2001, which resulted in a signed agreement. The February agreement, signed by all three parties and
their attorneys, provides in pertinent part that:


[Son] shall be awarded and have conveyed to him by Special Warranty Deed the 87
acre tract and the 36 acre tract and [Daughter's] 50 acre tract by Special Warranty
Deed including without limitation [Daughter's] interest in the minerals and he shall
keep the approximate 29 acres from the original 54 acre tract previously deeded to
him . . . .[ (3)]



 After the February mediation, three issues arose related to releases, a covenant-not-to-sue, and other properties; the parties returned to mediation on June 11, 2001. Between the February
and June mediations, Daughter's attorney drafted an agreement and circulated it to Son and Mother. 
Daughter's attorney brought to the June mediation the latest version of the agreement, which differed
from earlier circulated drafts in several respects. In particular, the draft included as an exhibit a
summary of all conveyances necessary to accomplish the agreement. This summary stated that
Daughter would convey to Son her interests "in the surface and minerals" of the 176-acre tract and
Mother would convey her interests "in the surface," whereas a previously circulated draft of a deed
indicated Mother would convey her mineral interests as well as her surface estate. It appears that
no deeds were attached to this latest version of the agreement. At the end of the June mediation, the
parties and their attorneys signed a new agreement drafted by the attorneys for Daughter and Mother.

 The June agreement provides:


 8. Warranties & Representations. As part of the consideration for the payment
of [$16,000 from Daughter to Son], and the covenants and conveyances
described in Exhibit A, each of the Parties expressly covenants, agrees, warrants
and represents, for themselves and their heirs, executors, legal representatives,
successors and assigns, that the Party:


 . . . .


 d. before executing this Agreement, has been fully informed of its terms,
contents, conditions and effect, and has had the benefit of the advice of an
attorney of the Party's own choosing;


 e. before executing this Agreement, has carefully read and understood the
contents of the Agreement and has signed it as the Party's own free act;


 f. has relied solely and completely on the Party's own judgment, and the
advice of the Party's counsel, in making and executing this Agreement and
has not relied on any representations or promises of any person released hereunder;


 . . . .


 j. fully understands and agrees that no representation by any attorney or other
representative acting on behalf of any of the Parties has influenced or
induced the execution of this Agreement.


. . . .


12. Terms of Agreement; Headings. It is understood that the terms of this
Agreement are contractual and not mere recital. . . .


. . . .


15. Lack of Coercion or Duress. The Parties agree that they have each entered into
this Agreement freely, without coercion or duress, and after having consulted
with professionals of the Party's own choice.



Each party signed the agreement, and their signatures were notarized. Each party's attorney signed
a page stating:


I hereby confirm that I have consulted with my client regarding the terms and
conditions of the above and foregoing Release and Settlement Agreement. I have
ascertained to my own satisfaction that my client fully understands the terms and
conditions thereof. . . . My client has executed this Agreement voluntarily and
without compulsion and is competent to understand the terms and conditions of the
Agreement and the advice that I have given about it.



 Exhibit 1 to the June agreement is a summary of the disposition of the various
properties. Also attached to the agreement are eleven unexecuted warranty deeds and three maps. 
Exhibit 1 states that Mother will "convey to [Son] the interests of [Mother] in the surface of the
176.57-acre tract" and Daughter will "convey to [Son] the interests of [Daughter] in the surface and
minerals of the 176.57-acre tract." The deed in question states that Mother conveys to Son her
"rights, title, and interest in the surface estate only, and not the minerals," to the 176-acre tract. In
addition to signing the agreement, Son, Daughter, and Mother initialed each page of the agreement
and every attachment, including Exhibit 1 and the deed conveying to Son only Mother's surface
estate in the 176-acre tract.

 Shortly after the June mediation, Son refused to sign the deeds or an agreed judgment. 
Mother and Daughter returned to court to enforce the June agreement. The district court held two
hearings on the motion to enforce; at those hearings, Son argued that in the June agreement Mother
wrongly reserved her mineral interest in the 176-acre tract. He argued that Mother had already
disclaimed her surface interest in the tract, making the conveyance to him worthless without the
minerals. (4) The district court found that the June and February agreements should be enforced as
Rule 11 agreements and rendered a judgment of partition in accordance with the agreements. 
Additionally, the court found that the February agreement did not require Mother to convey to Son
her mineral interests in the 176-acre tract.


Discussion

 Son contends that the June agreement was not enforceable because he never agreed
to Mother's reservation of her mineral interest and because the February agreement was ambiguous
as to whether Mother's mineral interest was to be conveyed. He further contends that the June
agreement was obtained by fraud, misrepresentation, trickery, and/or mistake. Therefore, argues
Son, the district court erred in enforcing the June agreement. Instead, the district court should have
enforced the February agreement or, in the alternative, denied Mother and Daughter's motion to
enforce and either sent the parties back to mediation or set the cause for trial.

 Son correctly asserts that a party may revoke his or her consent any time before the
trial court renders judgment, and that a so-called agreed judgment rendered after consent is
withdrawn is void. S & A Rest. Corp. v. Leal, 892 S.W.2d 855, 857 (Tex. 1995); see Padilla v.
LaFrance, 907 S.W.2d 454, 461 (Tex. 1995); Alcantar v. Oklahoma Nat'l Bank, 47 S.W.3d 815, 819
(Tex. App.--Fort Worth 2001, no pet.). However, a settlement agreement that meets the
requirements of Rule 11 may be enforced as a binding contract under general contract law rather than
as an agreed judgment. See Tex. R. Civ. P. 11; Padilla, 907 S.W.2d at 461; Alcantar, 47 S.W.3d
at 819.

 In construing a contract, a court's primary concern is discerning the true intentions
of the parties as expressed by the contract. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983);
Sidelnik v. American States Ins. Co., 914 S.W.2d 689, 691 (Tex. App.--Austin 1996, writ denied). 
To determine the parties' intentions, courts consider the entire writing, seeking to harmonize and
give effect to all contractual provisions, if possible. Hofland v. Fireman's Fund Ins. Co., 907
S.W.2d 597, 599 (Tex. App.--Corpus Christi 1995, no writ). The language used by the parties is
to be given its plain, grammatical meaning unless it appears that to do so would defeat the parties'
intentions. Lyons v. Montgomery, 701 S.W.2d 641, 643 (Tex. 1985); see also Snyder v. Eanes Indep.
Sch. Dist., 860 S.W.2d 692, 696 (Tex. App.--Austin 1993, writ denied) (meaning given to
contractual language is question of law and should be interpreted to carry out parties' intentions).

 Separate instruments may be read together as one contract if they pertain to the same
transaction, even if they do not expressly refer to each other. Board of Ins. Comm'rs v. Great S. Life
Ins. Co., 239 S.W.2d 803, 809 (Tex. 1951); Cothron Aviation, Inc. v. Avco Corp., 843 S.W.2d 260,
263 (Tex. App.--Fort Worth 1992, writ denied); Massey v. Galvan, 822 S.W.2d 309, 315 (Tex.
App.--Houston [14th Dist.] 1992, writ denied). The separate instruments need not have been
executed contemporaneously, but they must not conflict with respect to issues such as terms and
parties. Cothron Aviation, Inc., 843 S.W.2d at 263.

 Whether a contract is ambiguous is a question of law for the trial court to decide by
viewing the contract as a whole in light of the circumstances under which the contract was entered. 
Coker, 650 S.W.2d at 394; Sidelnik, 914 S.W.2d at 691. If the contract can be given a definite or
certain meaning, then it is not ambiguous and will be interpreted as a matter of law. Coker, 650
S.W.2d at 393; Sidelnik, 914 S.W.2d at 691. That the parties draw differing interpretations or that
the contract uses unclear or uncertain language does not necessarily render a contract ambiguous. 
See Weslaco Fed'n of Teachers v. Texas Educ. Agency, 27 S.W.3d 258, 264 (Tex. App.--Austin
2000, no pet.); Hofland, 907 S.W.2d at 599. Courts should not strain to find ambiguities if by so
doing they defeat the parties' probable intentions. Quality Oilfield Prods., Inc. v. Michigan Mut. Ins.
Co., 971 S.W.2d 635, 637 (Tex. App.--Houston [14th Dist.] 1998, no pet.).

 As fact finder, a trial court is the sole judge of credibility and weight to be given to
testimony. Montgomery Indep. Sch. Dist. v. Davis, 34 S.W.3d 559, 567 (Tex. 2000); Webb v. Jorns,
488 S.W.2d 407, 411 (Tex. 1972) ("It is an old and familiar rule that the fact finder may resolve
conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of
different witnesses."); Schneider v. Schneider, 5 S.W.3d 925, 931 (Tex. App.--Austin 1999, no
pet.). We will not second-guess a trial court's resolution of conflicts in the evidence, and the fact
finder's decision on evidentiary conflicts generally is regarded as conclusive. Schneider, 5 S.W.3d
at 931; see also Griffin Indus., Inc. v. Honorable Thirteenth Court of Appeals, 934 S.W.2d 349, 355
(Tex. 1996) (Baker, J., dissenting). Although we review a trial court's conclusions of law de novo,
we will uphold conclusions of law unless they are erroneous as a matter of law. See Westech Eng'g,
Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). We
will affirm a trial court's judgment if it can be supported by any valid legal theory. Id. 

 At the hearings, Son stated and Daughter agreed that the first draft of a deed, drawn
up after the February mediation to give Mother's interest in the 176-acre tract to Son, conveyed both
Mother's surface and mineral estates in the tract; Mother insisted that she never agreed to that
conveyance. Daughter's attorney said that at the June mediation, Mother's attorney "had documents
he wanted to use, and those did not include a conveyance of the minerals." Son stated that he never
agreed to Mother's reservation of her mineral estate in the 176-acre tract. Daughter's attorney
testified that she circulated draft deeds before the June mediation but never received any comments
from Son or Mother and so she "just showed up at mediation with drafts of all of the deeds according
to what I had sent out, but nobody had agreed to anything at that point." However, Son's attorney
stated Son had agreed to the draft deeds. A letter from Daughter's attorney to Son's attorney states,
"[W]e certainly welcome [Son] to either draft the deeds or to provide comments and suggestions
regarding the manner in which they should be handled."

 Son, who is himself an attorney, was represented by counsel throughout these
proceedings; he testified that he signed the June agreement because "[a]ll of the exhibits and
attachments were represented to me to be unchanged and I thought they were unchanged. I later
found they were changed." Son testified that at the June mediation he requested certain changes to
the draft agreement, such as the removal of a covenant-not-to-sue. (5) Son denied that he reviewed the
documents given to him after Mother's and Daughter's attorneys made changes, saying, "These
documents were presented after the mediator left[,] while the notary public was standing over me
and everybody else had already signed and initialed and they were waiting to leave."

 Daughter's attorney, who testified that the mineral interest for the 176-acre tract was
never mentioned as an issue to be addressed at the June mediation, testified that she brought to the
June mediation a draft deed in which Mother conveyed her surface and mineral interests to Son. 
However, the deed that was eventually attached to the June agreement came from a computer disk
provided by Mother's attorney. Daughter's attorney said that at the June mediation the mediator
asked the attorneys to use lists and deeds provided by Mother's attorney because those lists were
more accurate. She and Mother's attorney went to her office to prepare the final deeds using
Mother's attorney's computer disk. Daughter's attorney believed that at the time she and Mother's
attorney left to make final revisions, Son and Son's attorney had copies of the new deed reserving
Mother's mineral estate in Son's tract. Son and his attorney had at least an hour to review the
documents, which Daughter's attorney believed was "adequate time for that review." When they
returned from making changes, the mediator had left; Daughter's attorney reviewed the documents
with Daughter, asking her to sign the agreement and to initial each page of the agreement and of the
attached exhibits and deeds, which took about half an hour. The documents were then given to
Mother for her review and signature, and then to Son. Asked about a draft agreement introduced into
evidence, Daughter's attorney stated:


This is the copy that was given to the mediator when we walked in the room that day. 
As I recall, what occurred that day is, I walked in with the version of the settlement
agreement that I had circulated; versions of the special warranty deeds that I had
completed - those had not all been circulated because I just got the land description
the Friday before for some of that. And when we went in, this was the settlement
agreement that you [Mother's attorney] presented, saying that you had done the same
thing I had done in putting things together. So that was talked about at the
mediation.[ (6)]



The referenced draft states that Mother conveyed to Son her surface interest and Daughter conveyed
her surface and mineral interests. Daughter's attorney did not know whether Son read the deeds but
said, "I know that the mediator came out and said that there had been a request from that side to
please change the special warranty deeds to reflect the address for [Son] at his post office box." 
Daughter's attorney testified that when she and Mother's attorney went to her office to make changes
that "had been requested to be made both to the warranty deeds and to the main document of the
settlement agreement, we got a phone call from the mediator saying that changes had been requested
to Paragraph 10 of Exhibit 1 to that settlement agreement, specifically requesting that we delete some
language that appeared to be redundant." Mother's attorney stated that "this mineral issue was
discussed at the second mediation," but Son stated that such a statement was "a boldfaced lie" and
that Mother's mineral interest in the 176-acre tract was not discussed in the June mediation.

 The district court had before it conflicting testimony regarding the June agreement. 
Son contended that he was tricked into signing an agreement that contained changes of which he was
unaware, but Daughter's attorney testified that Son had a draft stating that Mother would convey
only her surface interest, as opposed to Daughter's conveyance to Son of her surface and mineral
interest in the 176-acre tract. There is evidence in the record to indicate that Mother retained a
surface interest in a small part of the tract, contrary to Son's assertion that she retained only the
mineral estate. Son was given the opportunity to draft the deeds himself and did not do so. He
signed and initialed each page of the June agreement, including Exhibit 1 (the Summary of
Conveyances) and Exhibit 8 (the deed for the 176-acre tract), both of which prominently mentioned
that Mother conveyed only her surface estate in the tract. 

 As we have detailed, the June agreement in several prominent places stated that each
party read and understood the entire document and entered into the agreement free of coercion and
duress. Son's attorney specifically affirmed that his client understood the terms of the agreement
and signed it voluntarily. The deed in dispute is four pages long, and the last two pages are simply
signature pages. The first full paragraph on the first page states, "[Mother] . . . does GRANT,
TRANSFER, and CONVEY, unto [Son] all of [Mother's] rights, title, and interest in the surface
estate only, and not the minerals . . . ." The February agreement on which Son heavily relies is silent
as to Mother's mineral interest in the tract, while specifying that Son will receive Daughter's mineral
interest. That an early draft of a deed, to which Mother did not agree, stated Mother would convey
to Son her mineral interest does not conclusively establish that Son was tricked into signing a
changed agreement in June. The district court was in a position to evaluate the testimony and resolve
all conflicts in the evidence. See Schneider, 5 S.W.3d at 931. We will not second-guess that
determination. See id.

 The trial court could have considered the repeated language in the June agreement
that each party read and understood its terms and did not rely on any representations by another party
or another party's representative as an inducement to enter the agreement. The court could have
considered that each party initialed every page of the agreement and the complained-of deed. The
court could have considered that the February agreement did not specifically require Mother to
convey to Son her mineral estate in the 176-acre tract and so did not contradict the June agreement
that specifically reserved her mineral estate in that tract. The court could have considered that Son,
as an attorney who was represented by his own counsel, would have or should have read the
agreement and the disputed deed before signing the agreement. We hold that the two agreements
satisfy the requirements of Rule 11 and hence the district court did not err in finding the agreements
enforceable or in signing a judgment of partition in accordance with the signed agreements. We
overrule Son's issues on appeal and affirm the judgment of the district court.



 __________________________________________

 Bea Ann Smith, Justice

Before Chief Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: June 21, 2002

Do Not Publish
1. We will refer to appellant William A. Brown, Jr. as "Son," to appellee Ann Lenora Brown
as "Daughter," and to appellee Ann S. Brown as "Mother."
2. To be enforced under Rule 11, an agreement between attorneys or parties must be in
writing, signed, and filed as part of the record or made in open court and entered of record. Tex. R.
Civ. P. 11. The purpose of Rule 11 is to prevent parties from misconstruing or wrongly
remembering oral agreements regarding pending suits. Padilla v. LaFrance, 907 S.W.2d 454, 459-60 (Tex. 1995); see Ebner v. First State Bank, 27 S.W.3d 287, 296 (Tex. App.--Austin 2000, pet.
denied).
3. Son stated, and no one disputes, that the 176-acre tract is the property referred to in this
portion of the February agreement. Although the tracts described in the quoted language add up to
173 acres, we will defer to the parties' knowledge of the properties in question and refer to these
tracts collectively as the 176-acre tract.
4. Mother contends that in 1997 she disclaimed her surface interest in most of the tract, but
retained a surface interest in twenty-two or twenty-three acres. Son responded that the retention of
surface interest in those twenty-odd acres was a typographical error. Mother replied, "That's the
state of the record and the property records, Judge, and so that's what they're stuck with."
5. Son's attorney objected to some of Mother's questioning of Son, saying, "[D]iscussions
that took place in the mediation are protected and are not admissible for any purpose. So what the
Court has before it here are two settlement agreements and some testimony that he didn't agree to
one of the exhibits." The district court sustained the objection and said the attorneys should not "get
into anything discussed at settlement - mediation." Mother stated, "[M]y ultimate point is that [Son]
negotiated a change to Exhibit 1 [of the June agreement], which demonstrates that he reviewed
Exhibit 1." 
6. Son contends that Daughter's attorney's testimony establishes that only the mediator was
provided with a draft indicating that Mother was reserving her mineral interest. However, a careful
reading of the [record that the] testimony is not so clear. Daughter's attorney said she gave a copy
of the draft to the mediator when she walked into the room. She does not indicate that the parties
were not given the same draft or that they were given a different draft.