Footnotes in HTML versions of 
opinions are designated by boxes (click on the box to see the footnote text) and 
are not numbered. For an exact copy of the opinion, retrieve the Adobe PDF 
version.
 
 
IN 
THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0707 
════════════
 
Gilbert H. Olveda and Brendalee Olveda-North, Individually and as Representatives of the 
Estate of Frieda Hernandez, Deceased, Petitioners,
 
v.
 
Rene A. Sepulveda, M.D., 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourth District of 
Texas
════════════════════════════════════════════════════
 
             Justice O’Neill, 
dissenting.
            The 
court of appeals held that the expert report filed in this case was insufficient 
to allow the plaintiffs’ survivorship and wrongful-death claims to proceed under former Article 4590i, the Texas Medical Liability and 
Insurance Improvement Act (“MLIIA”). 

141 S.W.3d 679. Because I believe the report was 
sufficient to support the survivorship claim, I dissent from the Court’s denial 
of the plaintiffs’ petition for review. 
            Frieda 
Hernandez was seven-and-a-half months pregnant and complaining of severe 
abdominal pain when she checked in to St. Luke’s Hospital. Dr. Kuhl, an obstetrician, Dr. Sepulveda, a urologist, and Dr. Ramirez, an anesthesiologist, treated 
her during her hospitalization. Kuhl, assisted by 
Sepulveda and Ramirez, performed a cystoscopy 
(placement of a ureteral stent to relieve kidney obstruction) without electronic 
fetal monitoring. Hernandez’s baby died during the procedure and was later 
delivered by caesarian section. Shortly thereafter, Hernandez suffered a cardiac 
arrest, and died three days later from multiple organ failure caused by preeclampsia 

and HELLP Syndrome. 


            The 
Olvedas, Hernandez’s children, sued the health-care 
providers for survivorship and wrongful-death damages, alleging that had the 
doctors complied with the standard of care, they would have diagnosed and 
treated Hernandez’s condition in time to save her and her baby. The Olvedas filed an expert report prepared by Dr. Suresh, an 
obstetric anesthesiologist, which addressed Sepulveda’s alleged negligence. 
Sepulveda filed a motion to dismiss, arguing that Dr. Suresh was not a qualified 
expert under former Article 4590i.
            The 
trial court dismissed the claims against Sepulveda and granted his motion to 
sever. A divided court of appeals affirmed, holding that Dr. Suresh, an 
anesthesiologist, was not qualified to testify about the standard of care 
applicable to urologists, and that in any event the expert report failed to 
establish a causal relation between the alleged breach of the standard of care 
and the injury. 141 S.W.3d at 683. The Olvedas petitioned this Court for review.
            Section 
13.01 of former article 4590i requires plaintiffs in suits involving 
health-care-liability claims to submit an expert report. Act 
of May 5, 1995, 74th Leg., R.S., ch. 140, § 13.01, 
1995 Tex. Gen. Laws 985, 986 (former Tex. Rev. Civ. Stat. 
art. 4590i, § 13.01), repealed by 
Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 
10.09, 2003 Tex. Gen. Laws 847, 884. Rule 702 of the Texas Rules of 
Evidence requires that an expert be qualified “by knowledge, skill, experience, 
training, or education” regarding the issue. Tex. R. Evid. 
702. The MLIIA requires an expert who:
 
(1) 
is practicing medicine at the time such testimony is 
given or was practicing medicine at the time the claim arose;
 
(2) 
has knowledge of accepted standards of medical care for 
the diagnosis, care, or treatment of the illness, injury, or condition involved 
in the claim; and
 
(3) 
is qualified on the basis of training or experience to 
offer an expert opinion regarding those accepted standards of medical care.
 
Act of May 5, 1995, 77th Leg., R.S., ch. 
140, § 14.01(a), 1995 Tex. Gen. Laws 985, 988 (repealed 
2003). We held in Broders v. Heise, that “an expert of a different school [may] 
testify so long as the ‘subject of inquiry is common to and equally recognized 
and developed’ in both fields.” 924 S.W.2d 148, 152 (Tex. 1996) (quoting Hart v. Van Zandt, 399 S.W.2d 
791, 797 (Tex. 1965)); see also Roberts v. 
Williamson, 111 S.W.3d 113, 120-21 (Tex. 2003) (reiterating that an expert 
demonstrate “knowledge, skill, experience, training, or education” to testify 
regarding the specific issue before the court). In the medical context, “[t]here 
are certain standards universally regarded as ordinary medical standards beneath 
which no common or community standards may fall.” Reed v. 
Granbury Hosp. Corp., 117 S.W.3d 404, 409 (Tex. App.—Ft. Worth 2003, no pet.) 
(citing Webb v. Jorns, 
488 S.W.2d 407, 411 (Tex. 1972)). These standards apply across 
multiple schools of practice and to any physician. Id. 
            Dr. 
Suresh is a board-certified anesthesiologist. She has been in practice for 
thirty-five years as an obstetric anesthesiologist, has won awards for her 
obstetrical research, and holds tenured professorships at Baylor and the 
University of Texas Medical Schools. Dr. Suresh’s 
report states in part:
 
On 
reviewing the records, there was no evidence of documentation of history and 
physical examination, assessment or plan of action by Dr. Sepulveda. A 
reasonable expectation of any physician/surgeon who is planning a nonobstetric operative procedure on a parturient in the 
third trimester is to evaluate, assess and document a history, physical 
examination, and rationalize the plan of action. Further it is the 
responsibility of all physicians involved in the intraoperative care of the parturient to ensure both 
maternal and fetal well being during the entire intraoperative procedure.
 
Dr. 
Suresh did not address the standard of care particularly applicable to Dr. 
Sepulveda’s specialty, urology; rather, she addressed the general standard of 
care applicable to all physicians and surgeons performing a procedure on a 
patient in the third trimester of pregnancy. She was therefore properly 
qualified as an expert in this case. 
            Dr. 
Suresh’s report also met the MLIIA’s requirement that 
the report set forth “the manner in which the care . . . failed to meet the 
standards, and the causal relationship between that failure and the injury, 
harm, or damages claimed.” Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 13.01(r)(6), 1995 
Tex. Gen. Laws 
985, 986 (repealed 2003). An expert report “need not marshal all the plaintiff’s proof,” but must represent “a good-faith 
effort to comply with the statutory definition of an expert report” in the 
MLIIA. Bowie Mem’l Hosp. v. 
Wright, 79 S.W.3d 48, 52 (Tex. 2002) (citations omitted). A 
good-faith effort must (1) inform the defendant of the specific conduct called 
into question, and (2) provide a basis for the trial court to conclude that the 
claims have merit. Am. Transitional Care Ctrs. of Tex., Inc. v. 
Palacios, 46 S.W.3d 873, 879 (Tex. 2001). The expert report provided 
in part:
 
In 
a parturient patient who is in the third trimester, having contractions q 3-5 
minutes with fetal decelerations, the standard of care would have been to 
monitor uterine contractions and have continuous recording of [the fetal heart 
rate] by a qualified individual during the perianesthetic and perioperative 
period and to have arrangements for a stat ceserian 
section if the need arose.
. 
. .
[I]t 
is the responsibility of all physicians involved in the intraoperative care of the parturient to ensure both 
maternal and fetal well being during the entire intraoperative procedure. 
. 
. .
Further 
failure on the part of Dr. Kuhl, Dr. Ramirez, and Dr. 
Sepulveda to appropriately monitor the uterine contractions and the [fetal heart 
rate] resulted in adverse fetal outcome.
 
            Although 
this report establishes no causal connection between Sepulveda’s conduct and 
Hernandez’s death from preeclampsia and HELLP 
Syndrome, it is not similarly deficient with respect to the survival action. The 
expert’s report identifies how Sepulveda’s conduct failed to meet the applicable 
standard of care and purports to connect that conduct to the baby’s death, 
stating that Dr. Sepulveda’s failure to monitor uterine contractions and the 
fetal heart rate resulted in the baby’s death. I would conclude that the report 
was sufficient under the MLIIA to support the survival action, and accordingly 
dissent from the Court’s denial of the plaintiffs’ petition. 
 
 
__________________________________________
Harriet 
O’Neill
Justice
 
OPINION DELIVERED: 
March 3, 2006