MANOR CARE HEALTH SERVICES, INC., Four Seasons Nursing Centers, Inc. d/b/a Manor Care Health Care, Statex Corporation d/b/a Manor Care Health Services, HCR Manorcare Mesquite, L.P., and Healthcare & Retirement Corporation of America, Appellants,

v.

Jerome RAGAN, Individually and on behalf of the Estate of Paulette Ragan, Deceased, Appellee.

No. 14–05–00658–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 12, 2006.

Rehearing Overruled March 23, 2006.

---

3. Polk does not assert the violation of any other provision of the United States Constitution.

John F. Kapacinskas and Michael Elton Pierce, Houston, for appellants.

Joseph Todd Trombley, Houston, Chad Bassett Matthews, League City, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and ANDERSON.

## OPINION

ADELE HEDGES, Chief Justice.

Appellants, Manor Care Health Services, Inc.; Four Seasons Nursing Centers, Inc. d/b/a Manor Care Health Care; Statex Corporation d/b/a Manor Care Health Services; HCR Manorcare Mesquite, L.P.; and Healthcare & Retirement Corporation of America, file this interlocutory appeal from the trial court's denial of their motion to dismiss a health care liability claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon Supp.2005) (authorizing interlocutory appeals). Appellee, Jerome Ragan, sued appellants in his individual capacity and on behalf of the estate of Paulette Ragan, deceased. In their motion to dismiss, appellants attacked the sufficiency of medical expert reports filed by appellee. On appeal, appellants contend that in making its determination on the motion, the trial court should have considered only the first expert report filed by appellee and not the second report. Appellants further contend that regardless of whether only the first report is considered or both reports are considered, the reports are deficient, and

therefore, the trial court erred in refusing to dismiss the claims. We affirm.

### Background

This is a tale of two lawsuits filed by two different plaintiffs in two different courts. It is also a tale of medical expert reports alleged to be deficient, although timely filed, *not* one of two plaintiffs' failures to timely file expert reports at all.

On October 22, 2003, John Ragan, the brother of decedent Paulette Ragan, filed a lawsuit ostensibly on behalf of her estate in the 280th District Court in Harris County. Paulette died on November 11, 2002, allegedly from a pulmonary embolus while in the care of appellants, after having a lipoma surgically removed from her thigh. In his lawsuit, John Ragan asserted that appellants' deviation from the applicable standard of care proximately caused Paulette's death. Counsel for John Ragan filed a medical expert report prepared by Dr. Louis Silverman and dated October 28, 2003. Subsequently, appellants filed a motion to dismiss, claiming that Silverman's report was deficient under section 4590i of the Texas Medical Liability and Insurance Improvement Act (MLIIA).[1] John Ragan then moved to nonsuit the case. On June 8, 2004, the trial court dismissed the case pursuant to the nonsuit, without prejudice against refiling and without addressing the motion to dismiss.

On October 28, 2004, Jerome Ragan, Paulette's father, filed the current lawsuit in the 152nd District Court in his individu-

---

1. Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–41.05, 1977 Tex. Gen. Laws 2039–64 (subsequent amendments omitted) (former TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.2003)), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 864, 884 (current version at TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon Supp.2005)). John Ragan filed his lawsuit before the repeal of article 4590i;

therefore, it was governed by the provisions of article 4590i in effect at that time. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws at 899. Both former article 4590i and current section 74.351 require that a claimant asserting a health care liability claim must file an expert medical report in support of his or her claim within a specified period of time.

al capacity (under the Wrongful Death Statute[2]) and on behalf of Paulette's estate (under the Survivor Statute[3]).[4] Jerome's counsel filed the same expert report by Silverman that had been filed in the John Ragan lawsuit. Counsel also filed a second, slightly more detailed report by Silverman. As discussed more fully below, in his reports, Silverman criticized nurses employed by appellants for their alleged failure to continue administering anticoagulant medication to Paulette as a doctor had prescribed. Silverman stated that had the anticoagulant medication been continued, Paulette would probably not have suffered the pulmonary embolus that resulted in her death. Appellants filed a motion to dismiss, arguing: (1) the John Ragan lawsuit was improperly nonsuited and thus the court in the Jerome Ragan lawsuit should only consider the first Silverman medical report, which had been filed in the prior lawsuit; (2) the Jerome Ragan lawsuit should be dismissed because the first Silverman report was deficient; and (3) even if the trial court considered the second Silverman report, it too was deficient and the Jerome Ragan lawsuit should be dismissed. On appeal, appellants' arguments track those made in the motion to dismiss.

### How Many Reports to Consider?

We must first decide whether it was appropriate for the trial court to consider both Silverman reports or just the one that was filed in the first lawsuit. Appellants contend that the trial court should have considered only the first report because John Ragan impermissibly nonsuited the first lawsuit. Under Rule 162 of the Texas Rules of Civil Procedure, although a plaintiff may generally take a nonsuit at any time, any dismissal of the plaintiff's claims pursuant to the nonsuit will have no effect on any pending motion for sanctions. TEX.R. CIV. P. 162. Because in health care liability lawsuits, a claimant's failure to timely file a sufficient expert report may lead to dismissal of his or her claims with prejudice against refiling, courts have held that a claimant may not take a nonsuit under Rule 162 in such cases while a motion to dismiss is pending. *See, e.g., Hagedorn v. Tisdale,* 73 S.W.3d 341, 345–47 (Tex.App.-Amarillo 2002, no pet.); *Puls v. Columbia Hosp. at Med. City Dallas Subsidiary, L.P.,* 92 S.W.3d 613, 618 (Tex. App.-Dallas 2002, pet. denied).

Appellants contend, therefore, that the order of the 280th District Court recognizing the nonsuit of John Ragan's claims is interlocutory until the motion to dismiss filed with that court is resolved. Appellants further argue that because the John Ragan lawsuit in the 280th District Court is unresolved, the only expert report that the 152nd District Court could properly consider in the Jerome Ragan lawsuit was the report timely filed in the earlier lawsuit. We disagree.

As primary support for this argument, appellants cite an unpublished opinion of the Austin Court of Appeals and assert that because it "contains a procedural history nearly identical to that of the present case," it is persuasive in the case before us. *Wilson v. Austin Nursing Ctr.,* No. 03–00–00800–CV, 2002 WL 31118311 (Tex. App.-Austin Sept. 26, 2002, pet. denied). A review of the *Wilson* case, however,

---

2. TEX. CIV. PRAC. & REM.CODE ANN. § 71.001–.011 (Vernon 1997 & Supp.2005).

3. TEX. CIV. PRAC. & REM.CODE ANN. § 71.021 (Vernon 1997).

4. Jerome Ragan filed his lawsuit after the effective date of section 74.351 of the Civil Practice & Remedies Code; thus, that section governs his claim. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws at 899.

reveals that it is procedurally distinguishable from the present case. *Wilson* addressed two medical liability lawsuits filed at different times, involving the same injured party and the same defendant. 2002 WL 31118311, at *1. And, indeed, the first lawsuit was nonsuited after the defendant filed a motion to dismiss for failure to file an expert report. *Id.* There, the similarity to our case ends. In contrast to the case before us, the two lawsuits in *Wilson* were filed in the same district court by the same plaintiff. *Id.* The trial court determined that when the second suit was filed, the court still had plenary power in the first lawsuit because the nonsuit in the first suit was improper. *Id.* at *2. It then granted the motion to dismiss with prejudice in the first action; however, the court did not grant the motion to dismiss in the second action because it found that the two lawsuits did not involve the same conduct or injuries. *Id.* The Austin Court of Appeals affirmed. *Id.* at *7. In the case before us, the two lawsuits were filed in different district courts by different plaintiffs, and the court in which the second lawsuit was filed took no action in relation to the prior lawsuit. These procedural distinctions are sufficient to dissuade us from considering *Wilson* as controlling.

■ Appellants additionally cite *Martinez v. Lakshmikanth* for the proposition that a trial court has no discretion to dismiss a healthcare liability claim without prejudice when a claimant fails to timely file an expert report and the defendant moves to dismiss with prejudice. 1 S.W.3d 144 (Tex.App.-Corpus Christi 1999, pet. denied). However, unlike the claimant in *Martinez*, John Ragan timely filed an expert report. Thus, before the 280th District Court could have dismissed the prior lawsuit with prejudice, it would have to have considered the sufficiency of that report, and John Ragan could have requested a 30–day grace period in which to file an amended report. *See* Act of May 18, 1995, 74th Leg., R.S., ch. 141, § 1, 1995 Tex. Gen. Laws 985, 986–87 (former art. 4590i, §§ 13.01(g) and (*l* )).[5] Consequently, even assuming that Jerome Ragan and the 152nd District Court could somehow be bound by actions taken by John Ragan in the 280th District Court (which has not been shown by appellees), the 152nd still could have permitted Jerome Ragan to file an amended report. *Martinez* is therefore distinguishable and does not govern the present lawsuit.[6]

**5.** Both the current law governing expert reports in health care liability claims, section 74.351, and the prior law governing such reports, former article 4590i, section 13.01, provide for extensions or grace periods for filing an amended expert report when a claimant timely filed an initial expert report that may be deficient. Under former article 4590i, section 13.01(g), which governed the John Ragan lawsuit, a trial court may grant a 30–day grace period if the failure to meet the deadline was due to accident or mistake and not the result of conscious indifference. A motion seeking such grace period is considered timely if filed before any hearing on a motion to dismiss. *See Hansen v. Starr,* 123 S.W.3d 13, 20–21 (Tex. App.-Dallas 2003, pet. denied) (holding claimants waived contention they were entitled to grace period by failing to

file request before hearing on motion to dismiss); *Strom v. Mem'l Hermann Hosp. Sys.,* 110 S.W.3d 216, 226 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (same). The current law governing health care liability expert reports, section 74.351, permits the trial court to grant a 30–day extension for the claimant to file an amended report if the initial report is determined to be deficient. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c). The current version omits subsections of the prior law which permitted extensions where no report had been filed by the deadline. *See Mokkala v. Mead,* 178 S.W.3d 66, 75–76 (Tex.App.-Houston [14th Dist.] 2005, no pet. h.).

**6.** For the same reasons, our recent opinion in *Mokkala* is distinguishable. 178 S.W.3d 66. *Mokkala* also concerned two lawsuits involving the same patient and the same alleged

In conclusion, the present appeal is from the 152nd District Court in the Jerome Ragan lawsuit; it is emanating from neither the 280th District Court nor the John Ragan lawsuit. Appellants have offered no factual or legal basis to show why the 152nd court would be restricted to considering only the report filed by a different claimant in a different district court.[7] Accordingly, we will review both reports timely filed in the current lawsuit in determining whether the claimant met the statutory requirements.[8]

### Sufficiency of the Reports

■ We review a trial court's decision on a motion to dismiss a case under section 74.351 of the Civil Practice and Remedies Code for an abuse of discretion. *Group v.*

*Vicento,* 164 S.W.3d 724, 727 (Tex.App.-Houston [14th Dist.] 2005, pet. filed) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex. 2001)).[9] Under section 74.351(*l*), a trial court should grant a motion challenging the adequacy of an expert report if the report does not represent an objective good faith effort to comply with the definition of an expert report in subsection (r)(6). TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*). Subsection (r)(6) defines "expert report" as a written report providing a good faith summary of the expert's opinions regarding the standard of care, the manner in which the care rendered by the health care provider failed to meet the standard of care, and the causal relationship between that failure and the harm

conduct by the same health care providers. 178 S.W.3d 66, 67–70. We held that when a claimant with a health care liability claim nonsuits the original lawsuit and refiles his or her claim in a subsequent lawsuit, the 120–day period for filing an expert report does not start over with the filing of the second lawsuit but runs from the time the claim was first filed in the original lawsuit. *Id.* at 67–68, 71–72. The claimant in *Mokkala* failed to file a report in the first lawsuit before the expiration of 120 days; thus, when the claimant filed the second lawsuit (after taking a nonsuit in the first) the trial court should have granted the motion to dismiss for failure to file an expert report within 120 days of the initial filing. *Id.* at 76. We reversed and remanded on that basis. *Id.* In the situation now before us, John Ragan timely filed an expert report in the prior lawsuit, and the subsequent lawsuit was filed by a different plaintiff, alleging at least one additional cause of action (wrongful death). Because of these distinctions, the holding in *Mokkala* does not apply here.

7. We acknowledge that under Rule 330(g) of the Texas Rules of Civil Procedure, in a county that has two or more district courts with civil jurisdiction, any judge may hear only part of any case or proceeding. TEX.R. CIV. P. 330(g); *see also* TEX. GOV'T CODE ANN. § 74.094(a) (Vernon Supp.2005); *Pinnacle*

*Gas Treating, Inc. v. Read,* 160 S.W.3d 564, 566–67 & n. 2 (Tex.2005); *In re Garza,* 981 S.W.2d 438, 441 (Tex.App.-San Antonio 1998, orig. proceeding). However, the situation in the present case is not one in which a district judge is purporting to act in a district court that is not his or her own. *See, e.g., Pinnacle Gas,* 160 S.W.3d at 566. As discussed, the John Ragan and Jerome Ragan lawsuits are distinct actions filed in different district courts. Appellants did not request that the judge of the 152nd rule on the motion to dismiss in the John Ragan lawsuit in the 280th, but requested the judge of the 152nd to dismiss the Jerome Ragan lawsuit in the 152nd because the prior lawsuit should have been dismissed in the other court. Rule 330(g) and section 74.094(a) do not apply to this situation.

8. Jerome Ragan maintains on appeal that John Ragan nonsuited his prior claims because he was not named as administrator of Paulette's estate. However, the record before us is devoid of any evidence regarding the identity of the proper representative of the estate. Furthermore, because of our resolution of the issues in the text above, we need not resolve who the proper representative of the estate is (or was).

9. *Palacios* was decided under prior law. *See supra* n. 1, 4.

claimed. *Id.* § 74.351(r)(6). Additionally, in order to provide an acceptable report, the expert must establish that he or she is qualified to do so. *Id.* § 74.351(r)(5)(B). Therefore, to be adequate, an expert's medical liability report must establish his or her qualifications, the applicable standard of care, how that standard was breached by the particular actions of the defendant, and how that breach caused the damages claimed by the plaintiff. To constitute a good faith summary of the expert's opinions, a report must do more than merely state the expert's conclusions; it must fulfill two purposes: (1) inform the defendant of the specific conduct that is being called into question, and (2) provide a basis for the trial court to conclude that the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 879. Appellants contend that Silverman's two reports fail on each of the required elements.

 Appellants first argue that Silverman was not qualified to offer an opinion regarding the conduct of the nurses who worked for appellees because the reports do not demonstrate that he has any experience in nursing. Appellants do not cite any authority directly on point for their contention that to offer an expert opinion regarding nursing care, a physician must have experience in nursing.

Section 74.402(b) requires that to be qualified, an expert must (1) be practicing health care in a field that involves the same type of care or treatment as the defendant, (2) have knowledge of accepted standards of care for the diagnosis, care, or treatment of the illness, injury, or condition claimed by plaintiff, and (3) be qualified on the basis of training or experience to offer an expert opinion regarding the standard of care. TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b). The statute does not require that the expert be practicing in the exact same field, just in one that involves the same type of care or treatment. *Id.* § 74.402(b)(1). Although there is little Texas case law on the issue, a physician is not disqualified from offering an opinion regarding nursing care simply because he is a physician and not a nurse by profession. *See Hall v. Huff*, 957 S.W.2d 90, 100 (Tex.App.-Texarkana 1997, pet. denied) (holding that physician sufficiently demonstrated qualifications to opine regarding nursing standards of care, noting that "just because [the expert] is a physician does not necessarily render him unqualified as an expert on nursing standards of care"); *see also Hillcrest Baptist Med. Ctr. v. Wade*, 172 S.W.3d 55, 60 (Tex.App.-Waco 2005, pet. filed) (holding that under section 74.403(a) only a physician may testify regarding medical causation even in cases involving the conduct of nurses); *Blan v. Ali*, 7 S.W.3d 741, 746–47 (Tex. App.-Houston [14th Dist.] 1999, no pet.) ("[A] medical witness who is not of the same school of practice may be qualified to testify if he or she has practical knowledge of what is usually and customarily done by other practitioners under circumstances similar to those that confronted the defendant. . . ."); *Paris v. Kreitz*, 75 N.C.App. 365, 331 S.E.2d 234, 245 (1985) ("Physicians are clearly acceptable experts with regard to the standard of care for nurses."); *Goff v. Doctors Gen. Hosp. of San Jose*, 166 Cal.App.2d 314, 333 P.2d 29, 33 (1958) ("[S]urely, a qualified doctor would know what was standard procedure for nurses to follow.").[10]

---

10. The case of *Sullivan v. Edward Hospital* is also instructional. 209 Ill.2d 100, 282 Ill. Dec. 348, 806 N.E.2d 645 (2004). In *Sullivan*, the Illinois Supreme Court upheld the trial court's striking of a physician's trial testimony regarding the standard of care for nurses. *Id.* at 653. The court determined that under Illinois law, which requires an expert to be licensed in the same profession as the defendant, a physician ordinarily could not

Regarding his qualifications, Silverman stated in his first report: "I am a Board Certified General, Thoracic and Vascular Surgeon in active practice in Houston, TX. My credentials are detailed in the attached CV. I treat patients with skin ulcerations such as that suffered by Ms. Ragan, and am qualified by education, training, and experience to render an expert opinion regarding the quality of such care." Silverman's *curriculum vitae*, which was attached to the report, details significant experience in the research and practice areas of general, thoracic, and vascular surgery. In his reports, as detailed below, Silverman specified what the nursing staff should have done in treating Paulette (*i.e.*, continue administering her prescribed anticoagulant medication) and what they failed to do (*i.e.*, continue administering her prescribed anticoagulant medication).

It is important to note that Silverman is not professing to be an expert on all things related to nursing; he merely opines that in the situation presented in this case, the nursing staff had the responsibility to administer all of the anticoagulant medication prescribed by the physician. Silverman's experience and knowledge in regard to the type of care at issue here qualifies him to make this conclusion. Accordingly, we find that the trial court did not abuse its discretion in determining that Silver-

man's assertion of qualification was adequate under the statute.

■ Appellants next assert that Silverman failed to adequately discuss the relevant standard for the nursing care of patients such as Paulette. Indeed, appellants assert that Silverman wholly failed to set out a standard of care. We disagree. Silverman stated that "a patient whose physical status and habitus renders her vulnerable to developing pulmonary emboli requires initiation and maintenance of an appropriate level of anticoagulation through the period of vulnerability." He further stated that the responsibility for ordering anticoagulant therapy belongs to the treating physician but that Manor Care's staff had the responsibility to administer the therapy as ordered. He further described in some detail Paulette's medical history and status that rendered her vulnerable to developing pulmonary emboli.

In *Palacios*, the sole case cited by appellants in support of their argument, the Supreme Court found that an expert report was deficient because the expert failed to at least state what the defendant should have done under the standard of care. 46 S.W.3d at 879–80. The court emphasized that a "fair summary" does not require a full statement of the stan-

provide an expert opinion regarding nursing standards of care. *Id.* at 653–660. However, the court noted two important situations where this reasoning would not hold true: (1) when the expert opinion in question was contained in the preliminary report required at the onset of a medical malpractice case, and (2) when the expert opinion does not potentially hold the nurse to a higher standard because the testifying expert is a physician. *Id.* at 656–57. The latter point is amply illustrated in *Wingo v. Rockford Memorial Hospital*, wherein three physicians were permitted to testify that a nurse violated the standard of care by not properly communicating with her supervising physician. 292 Ill.App.3d 896,

226 Ill.Dec. 939, 686 N.E.2d 722, 729 (1997). Both of the situations noted by the *Sullivan* court are present here: (1) Silverman's opinion was contained in a preliminary expert report, and (2) his opinion does not appear to hold the nurses to a higher standard. Silverman basically opined regarding the nurses' duty to administer medication as prescribed by the physician, an issue about which a physician with Silverman's experience should be very familiar. We further note that Texas law does not include a requirement (as does Illinois) that the expert must be licensed in the same profession as the defendant. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.402(b).

dard of care but is sufficient so long as it states what the defendant should have done that he or she indeed did not do. *Id.* at 880. Here, Silverman specifically described what he believed the nursing staff should have done and why they should have done it—they should have continued administering anticoagulant medication as directed by the physician because this treatment probably would have prevented Paulette from developing pulmonary emboli. This is a succinct and sufficient statement of the standard of care for the nurses in this case.[11]

Appellants next argue that Silverman did not adequately discuss the alleged breach of the standard of care. Regarding breach, Silverman stated that according to medical records, Paulette received appropriate doses of anticoagulant medication for a period of time (November 1 through November 8) and then "Manor Care's staff failed to administer the last 2 days of anticoagulant therapy as ordered" (November 9 and 10). We find Silverman's statement to be an adequate summary of his conclusions regarding breach of the standard of care.

Lastly, appellants argue that Silverman failed to adequately address causation. Appellants specifically assert that Silverman failed to use the terms "causation" or "proximate cause" and that he failed to explain the link between the alleged breach and Paulette's death. Regarding causation, Silverman averred that "Manor Care staff's failure to continue anticoagulant treatment as ordered contributed to [Paulette's] pulmonary embolus."

He stated that "[h]ad this therapy been continued as the standard of care mandates, in all reasonable medical probability, [Paulette] would not have suffered the massive pulmonary emboli that caused her irreversible cardiac arrest." He further opined that "[t]he failure to continue this needed therapy clearly resulted in Ms. Ragan's demise." Although he did not use the specific terms identified by appellants, his meaning was made clear by the use of terms such as "contributed to," "resulted in," "would not have suffered," and "caused." Furthermore, viewed in the context of Silverman's description of Paulette's condition, what the nurses should have done, and what they failed to do, it is clear that he is saying that the administration of anticoagulant medication as prescribed was necessary to prevent Paulette from suffering pulmonary emboli and that because the drugs were not administered as prescribed, Paulette probably suffered pulmonary emboli and consequently died. Silverman's contention that the nurses' breach of the standard of care is linked to her death is adequately explained in the report. Because we find that Silverman's expert report adequately described his qualifications and summarized his conclusions regarding the standard of care, breach of the standard of care, and causation elements, we overrule appellants' second issue.

We affirm the trial court's order.

---

11. At oral argument, appellants additionally suggested that it was not a reasonable inference that the nurses should have administered all of the prescribed medication as directed because there may be situations in which a nurse should not administer all of the prescribed medication to a patient. However, this generalized, speculative, unsupported argument does nothing to detract from Silverman's context-specific statements. There is no requirement that an expert cover all conceivable possibilities in his preliminary section 74.351 report.