**Cecelia LEDESMA, Appellant**

**v.**

**George L. SHASHOUA, M.D.; Oakwood Women's Cenre, P.A. at Round Rock; Joseph Eddings; B. Johns, CRNA; and Round Rock Medical Center, Appellees.**

**No. 03–05–00454–CV.**

Court of Appeals of Texas, Austin.

May 23, 2008.

Carolyn M. Barnes, Legal Guidance, Carolyn Barnes, PC, Round Rock, TX, for Appellant.

Brett David Timmons, Michelle E. Roberson, Cooper & Scully, PC, Dallas, TX, for Appellees.

Before Chief Justice LAW, Justices PATTERSON, PURYEAR, PEMBERTON, WALDROP and HENSON.

## ON MOTION FOR RECONSID-ERATION EN BANC

BOB PEMBERTON, Justice.

### *SUPPLEMENTAL OPINION*

Ms. Ledesma has filed a motion for reconsideration en banc. In addition to re-urging her arguments on original submission, Ledesma contends that her inability to obtain discovery before the 120–day expert-report deadline caused section 74.351 of the Texas Civil Practice and Remedies Code to operate unconstitutionally in her case and rendered the district court's refusal to grant her a 30–day extension under 74.351(c) an abuse of discretion. As we recently suggested on rehearing in *Bogar v. Esparza,* " 'we can certainly imagine a due process deprivation to a health care liability claimant pinned between a firm expert report deadline and a hypothetical absence of discovery tools.' " 257 S.W.3d 354 (Tex.App.–Austin 2008, no. pet. h.) (op. on reh'g) (quoting *Thoyakulathu v. Brennan,* 192 S.W.3d 849, 855 (Tex.App.–Texarkana 2006, no pet.)). That case has not been presented to us here. Ledesma has not fully and effectively utilized the discovery methods that section 74.351(s) allows, nor preserved any complaints regarding deprivations of such discovery.

We overrule Ms. Ledesma's motion for reconsideration en banc.

### *DISSENTING OPINION*

DIANE HENSON, Justice.

The expert-report requirement found in section 74.351 of the civil practice and remedies code was enacted as a gate-keeping measure, intended to weed out frivolous claims and encourage expert screening to ensure that a viable cause of action exists before the parties expend substantial time and effort in litigation. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351 (West Supp.2007); *Sellers v. Foster,* 199 S.W.3d 385, 398 (Tex.App.–Fort Worth

2006, no pet.) (statute enacted to "curtail frivolous claims against physicians and related health care providers"); *Horsley–Layman v. Angeles,* 968 S.W.2d 533, 537 (Tex.App.–Texarkana 1998, no pet.) (expert-report requirement created "to address the perceived problem that litigants were filing unmeritorious claims against medical practitioners which were not adequately investigated in a timely manner"). The present case, however, involves Cecelia Ledesma entering the hospital for surgery on her appendix and an ovary, only to leave the hospital less than 24 hours later with permanent damage and paralysis in her left arm, hand, and wrist—an area where there had been no prior injury. It would seem that Ledesma's suit is hardly the type of claim that the statute was intended to prevent.

Expert reports serve the dual purposes of giving notice to the medical providers of the basis for the claim and providing a basis for the trial court to conclude that the claims have merit. *See American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex.2001). Section 74.351(r)(6) merely requires a summary of the expert's opinions "as of the date of the report," rather than a full-blown analysis of the claim that could only be completed after full discovery. *See Palacios,* 46 S.W.3d at 879 ("[A] plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial.").

Section 74.351(c) authorizes the trial court to grant a 30–day extension of time for a claimant to cure any deficiencies in her expert reports. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(c). The majority holds that the trial court did not err in denying Ledesma's request for an exten-

sion under section 74.351(c). While the trial court's decision whether to grant such an extension is discretionary, *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex.App.–Austin 2007, no pet.), I would hold that the trial court abused its discretion in denying Ledesma's request for extension.

A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985). The trial court in the present case gave no indication why Ledesma's request for an extension under 74.351(c) was denied, thus providing no reasonable measure by which this Court could confirm that the decision was not arbitrary or capricious. While the trial court has discretion in deciding whether to grant an extension under 74.351(c), *Austin Heart*, 228 S.W.3d at 279, there must also be some meaningful review for the abuse of such discretion. An abuse of discretion does not exist as long as there is "some evidence of a substantive and probative character to support the trial court's decision." *Hart v. Wright*, 16 S.W.3d 872, 875 (Tex.App.–Fort Worth 2000, pet. denied). Significantly, no such evidence has been provided in the present case. There appears to be no basis in the record for the trial court's refusal to grant Ledesma's timely request for the statutorily authorized extension of time.

In deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery—a situation analogous to Ledesma's request for an extension, which was based on her difficulties in conducting discovery—the Texas Supreme Court has considered factors such as the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the contin-

uance has exercised due diligence to obtain the discovery sought. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex.2004).

Ledesma filed suit on January 12, 2004, and requested an extension of time for filing expert reports for the first time on April 29, 2004, noting that she anticipated delays in obtaining sufficient reports due to ongoing discovery disputes. Ledesma repeated her request for an extension of time on July 13, 2004, again emphasizing problems with discovery. The record does not indicate any undue delay by Ledesma in requesting her extension of time that would give the trial court reason to deny her request.

The parties' discovery disputes were based on Ledesma's request that she be allowed to depose two nurses who were involved in the surgery, in order to ascertain the actual events that took place during the procedure. Without knowing what actually happened during Ledesma's surgery, her experts were at a distinct disadvantage in preparing their reports, particularly in opining on how Bruce Johns's actions deviated from the standard of care or the causal link between Johns's actions and the injury. Ledesma's inability to obtain the requested discovery may have prevented her from acquiring additional material information that she could have used to address any alleged deficiencies in her expert reports prior to the statutory deadline.

Furthermore, it appears that Ledesma exercised due diligence in attempting to obtain sufficient expert reports. She served two expert reports listing Johns by name—one of which was written by an accomplished anesthesiologist from Cornell University—each containing a significant amount of detail in light of the fact that she was forced to proceed with extremely limited information due to the ongoing discovery disputes. In fact, the trial court

apparently had no problem with the content of the reports with respect to Dr. Joseph Eddings, the anesthesiologist assigned to Ledesma's surgery, as it found that the reports were sufficient under section 74.351 as to Eddings.

It is hard to fathom why the trial court found that Ledesma's expert reports were insufficient as to Johns, while simultaneously finding that they were sufficient as to Eddings. In the same order granting Johns's motion to dismiss on the basis of section 74.351, the trial court denied Eddings's motion to dismiss on the same grounds. The trial court provided no explanation for this distinction, nor is a reasonable explanation readily apparent from the record. Dr. Dinner's report references the duty and standard of care of "[t]he anesthesia team consisting of Dr. Joseph Eddings and Bruce Johns CRNA" and makes no distinction between Eddings or Johns at any point during the report. Dr. Hamilton's report states that it was the negligence of the surgeons "along with that of Dr. Joseph Eddings MD, the anestheologist [sic], and Bruce Johns, Certified Registered Nurse Anesthetist, that produced a severe inexcusable injury" to Ledesma's radial nerve. Dr. Hamilton's report does not distinguish the conduct or standard of care applicable to Eddings from that applicable to Johns. See In re Stacy K. Boone, P.A., 223 S.W.3d 398, 405

(Tex.App.–Amarillo 2006, no pet.) (holding that where same standard of care applied to both physician and physician assistant, expert report need not separately set forth standard of care applicable to physician assistant).[1]

The Texas Supreme Court has allowed anesthesiologists to testify as experts as to the standard of care required of nurse anesthetists. See Webb v. Jorns, 488 S.W.2d 407, 410–11 (Tex.1972).[2] Yet in the present case, the trial court inexplicably determined that the expert reports were inadequate as to Johns, but adequate as to Eddings. Significantly, the trial court dismissed only the claim against Johns as a result of the expert reports, leaving intact the claims against the medical center, the surgeon who performed the procedure, and Eddings. The trial court's conclusion that only the claim against Johns was subject to dismissal serves to reinforce the notion that this was not the type of frivolous claim that the expert-report requirement was meant to prevent.

As this Court has previously noted, the purpose of the 30–day extension provided in section 74.351(c) is to allow a party to correct defects in a timely filed expert report. See Austin Heart, 228 S.W.3d at 278 ("[W]e are of the view that the cure provisions of section 74.351(c) are designed to allow the plaintiffs an opportunity to address and correct the defect.").[3] The

---

1. Nurse anesthetists and physician assistants are treated similarly by the occupations code. See Tex. Occ.Code Ann. §§ 157.051–.060 (West 2004 & Supp.2007) (subchapter entitled "Delegation to Advanced Practice Nurses and Physician Assistants"); see also id. § 301.152 (West 2004) (defining "advance practice nurse" to include nurse anesthetists).

2. A physician is not disqualified from offering an opinion regarding nursing care simply because he is a physician, rather than a nurse. See Manor Care Health Servs., Inc. v. Ragan, 187 S.W.3d 556, 562 (Tex.App.–Houston [14th Dist.] 2006, pet. granted, judgm't vacat-

ed w.r.m.) (physician need not have nursing experience to offer expert opinion regarding nursing care); Hall v. Huff, 957 S.W.2d 90, 100 (Tex.App.–Texarkana 1997, pet. denied) ("Various jurisdictions, including Texas, that have addressed the issue of whether a physician is qualified to render expert testimony as to nursing standards of care have found physicians to be qualified.").

3. As Justice Willett suggests in his concurring opinion in Ogletree v. Matthews, 262 S.W.3d 316 (Tex.2007) (Willett, J., concurring), parties using the 30–day extension are not limited to merely making changes to an existing

intent behind this extension is analogous to the purpose of special exceptions to civil pleadings, which is to "compel clarification of pleadings when the pleadings are not clear or sufficiently specific or fail to plead a cause of action." *See Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 635 (Tex. 2007). When a trial court sustains special exceptions, it must give the pleader an opportunity to amend the pleading, unless the defect cannot be cured. *Id.* The expert-report requirement and the extension allowed by section 74.351(c), much like the concept of special exceptions and the opportunity to amend pleadings, should be used as procedural tools to help clarify the issues in complex litigation, rather than as a statutory trap for the unwary in what might otherwise be a meritorious claim.

As a result, I would hold that the trial court acted in an arbitrary and unreasonable manner by denying Ledesma an extension of time to correct her expert reports, where no reasonable grounds for denial are apparent and when it is clear that she exercised due diligence in attempting to obtain sufficient reports and repeatedly asking for notice and time to cure any deficiencies in the event that the court determined the reports were insufficient. While the majority points to the fact that Ledesma has not preserved any complaints on appeal regarding discovery, such preservation of error is not necessary in order for this Court to review the record for evidence of Ledesma's due diligence in attempting to obtain sufficient reports. In any case, one wonders whether the parties' discovery disputes could have been resolved more efficiently if Ledesma had been afforded the 30–day extension contemplated in section 74.351(c).

---

deficient report, but may actually substitute a different expert, and therefore an entirely new report. *See id.* at 323 ("[D]esignating the wrong type of medical professionals to opine

Because I would hold that, in light of the circumstances, the trial court abused its discretion in failing to grant an extension of time under section 74.351(c), I respectfully dissent.

---

on standard of care[ ] is the type of defect for which a trial court may grant a discretionary section 74.351(c) extension.").