Affirmed
and Opinion filed August 20, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-01090-CV

____________

 

THE METHODIST HOSPITAL, Appellant

 

V.

 

BEVERLEY SHEPHERD-SHERMAN, Appellee

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 2008-06448

 



 

O P I N I O N

This is an interlocutory appeal of the
trial court=s order denying appellant The Methodist Hospital=s motion to
dismiss the health care liability claims of appellee Beverley Shepherd-Sherman
(ASherman@) based on her
failure to meet the expert report requirements of chapter 74 of the Texas Civil
Practice and Remedies Code.  Methodist claims in four issues that the motion to
dismiss should have been granted because Sherman=s expert was not
qualified and because the report was insufficient regarding the standard of
care, breach of the standard of care, and causation.  We conclude that the
trial court did not abuse its discretion in denying Methodists=s motion to
dismiss, and thus we affirm.








                                                  BACKGROUND

Sherman suffers from Marfan syndrome,
which is a condition that damages connective tissue in the body and can affect
many bodily systems, including the cardiovascular system.  Sherman was a
long-term patient of Dr. Neal Kleiman, and he told her that if she ever had
chest pains, she should call him and go to an emergency room.  Dr. Kleiman would
then ensure that she was treated by Dr. Joseph Coselli, a surgeon and Marfan
syndrome specialist.  In 2001, this scenario happenedCSherman
experienced chest pains and called Dr. Kleiman on the way to the Methodist emergency
room, and Dr. Kleiman contacted Dr. Coselli, who met her at the hospital and
performed heart surgery.

In February 2006, Sherman again
experienced chest pains and called Dr. Kleiman on her way to the Methodist
emergency room.  According to Sherman, this time Dr. Kleiman refused to call
Dr. Coselli, despite her repeated requests.  Dr. Kleiman contacted Dr. Alan
Lumsden instead.  Sherman continued to insist to various doctors and hospital
employees that Dr. Coselli was her doctor and that she wanted him to be
contacted, but she was told that Dr. Coselli no longer worked for Methodist and
that Dr. Lumsden had taken his place.  Two days after being admitted to
Methodist, Dr. Lumsden and Dr. Michael Reardon performed aortic stent graft
surgery on Sherman.  After the surgery, Sherman tracked down Dr. Coselli, who
transferred her to another hospital and removed the stent.  Sherman suffered
complications from the stent surgery, which required many subsequent surgeries
and left her unable to work or care for herself alone.

Sherman sued Methodist and Drs. Kleiman,
Lumsden, and Reardon.  She alleged, inter alia, that the doctors were negligent
because they misplaced the stent and because a stent is contraindicated for a
Marfan syndrome patient.  Sherman alleged that Methodist is liable because its
doctors and employees did not honor her requests to have Dr. Coselli treat her
and Dr. Coselli would not have inserted a stent, thereby preventing all of her
subsequent problems.








Pursuant to chapter 74 of the Civil
Practice and Remedies Code, Sherman filed the expert report and curriculum
vitae of Dr. Phillip Adams.  The defendants all objected, and Sherman was given
an opportunity to file a supplemental report.  The defendants again objected to
Sherman=s supplemental
report and filed a motion to dismiss, which the trial court denied.  Methodist
is the only defendant appealing the trial court=s ruling.  We
consider the initial and supplemental reports together in assessing Sherman=s compliance with
chapter 74.

                                                      ANALYSIS

A.  Legal Framework

Section 74.351 of the Civil Practice and
Remedies Code requires a health care liability claimant to provide the
defendant with an expert report within 120 days after filing the petition.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a) (Vernon
Supp. 2008).  A defendant may then file a motion challenging the adequacy of
the expert=s report, and the trial court Ashall grant@ the motion if it
appears that the report does not represent a good faith effort to comply with
the statutory requirements.  Id. ' 74.351(a), (l). 
A sufficient expert report must provide a fair summary of the expert=s opinions
regarding the applicable standard of care, the manner in which the care
provided failed to meet that standard, and the causal relationship between that
breach and the injury, harm, or damages claimed.  Id. ' 74.351(r)(6); Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878B79 (Tex. 2001). 
In providing the expert=s opinions on these elements, the claimant
need not marshal his evidence or present sufficient evidence to avoid summary
judgment.  Palacios, 46 S.W.3d at 878; Patel v. Williams, 237
S.W.3d 901, 904 (Tex. App.CHouston [14th Dist.] 2007, no pet.). 
Rather, the report must provide enough information to fulfill two purposes: 
(1) to inform the defendant of the specific conduct the plaintiff has called
into question and (2) to provide a basis for the trial court to conclude the
claims have merit.  Palacios, 46 S.W.3d at 879; Patel, 237 S.W.3d
at 904.








We review a trial court=s ruling on the
adequacy of an expert report and a motion to dismiss based on a failure to meet
the expert report requirement for an abuse of discretion.  Palacios, 46
S.W.3d at 877; San Jacinto Methodist Hosp. v. Bennett, 256 S.W.3d 806,
811 (Tex. App.CHouston [14th Dist.] 2008, no pet.).  A trial court
abuses its discretion if it acts in an arbitrary or unreasonable manner or
without reference to any guiding rules or principles.  Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52
(Tex. 2002).  Though we may not substitute our judgment for that of the trial
court, the trial court has no discretion in determining what the law is or
applying the law to the facts.  Id.; Sanjar v. Turner, 252 S.W.3d
460, 463 (Tex. App.CHouston [14th Dist.] 2008, no pet.).

B.  Qualifications

In its first issue, Methodist challenges
Dr. Adams=s qualifications to render an opinion as to the
allegations against it.  To be qualified to provide an expert report under
chapter 74, an expert must, among other things, be Aqualified on the
basis of training or experience@ to offer an opinion in the relevant area
of health care.  Tex. Civ. Prac. &
Rem. Code Ann. ' 74.402(b)(3), (c)(1) (Vernon 2005).  We
must analyze the expert=s training and experience regarding the Aspecific issue@ before the court
to ensure the expert is qualified to give an opinion on that issue.  Thomas
v. Alford, 230 S.W.3d 853, 857 (Tex. App.CHouston [14th
Dist.] 2007, no pet.); see also In re Windisch, 138 S.W.3d 507, 512B13 (Tex. App.CAmarillo 2004, no
pet.).

Unlike her claims against the defendant
doctors, Sherman=s claims against Methodist are not based
on the surgery itself but on Methodist=s employees
denying her access to her doctor of choice.  Thus, the specific issue before
the court involves hospital admissions procedures when a patient requests a
specific doctor.  Methodist argues that although Dr. Adams may be qualified to
give opinions regarding Sherman=s medical treatment, that does not
establish his qualifications regarding the standard of care for hospital
admissions procedures and the conduct of non-physician hospital personnel when
a patient requests a specific doctor.













According to Dr. Adams=s report, he has
experience with all aspects of the admissions process, having been involved in
numerous admissions where either a patient has requested him as a doctor or a
patient he was involved with requested another doctor.  He further states that
he is familiar with the standard of care for hospital personnel based on his
work with admissions personnel and other hospital staff responsible for
following hospital policy.  Methodist contends that this experience does not
qualify Dr. Adams to opine on the standard of care applicable to non-physicians
because his experience is based on his perspective as a doctor, not, for
example, as a nurse or admissions clerk.  We disagree.  A doctor is not
automatically disqualified from giving opinions regarding other types of health
care providers, even though the standard of care may be different for those
providers.  See Baylor Med. Ctr. at Waxahachie v. Wallace, 278 S.W.3d
552, 558 (Tex. App.CDallas 2009, no pet.); Bennett, 256
S.W.3d at 814; Manor Care Health Servs., Inc. v. Ragan, 187 S.W.3d 556,
562 (Tex. App.CHouston [14th Dist.] 2006, pet. granted, judgm=t vacated,
remanded by agr.).  If the doctor is familiar with the standard of care for
other health care providers based on experience working with or supervising
them, then he can be qualified to render an opinion.  See Wallace, 278
S.W.3d at 558B59; Bennett, 256 S.W.3d at 813B14; Ragan,
187 S.W.3d at 563.  Based on Dr. Adams=s experience in
hospital admissions and working with hospital personnel in carrying out patient
requests for specific doctors, we conclude Dr. Adams is qualified to render
opinions regarding the claims against Methodist.[1] 
See Wallace, 278 S.W.3d at 558B59 (concluding
doctor qualified to provide standard of care for medical center based on work
with nurses, nurse practitioners, physician=s assistants, and
other doctors); Bennett, 256 S.W.3d at 814 (finding doctor qualified to
state standard of care for professional nurse in preventing bed sores based on
previous work with nurses in such situations); Ragan, 187 S.W.3d at 564
(stating that doctor was qualified to provide standard of care for nurses based
on experience working with nursing staff on the exact situation at issue in the
case).  Accordingly, we determine the trial court did not abuse its discretion
in denying Methodist=s motion to dismiss based on Dr. Adams=s purported lack
of qualifications, and we overrule its first issue.

C.  Standard of Care and Breach

In its second and third issues, Methodist
argues that Sherman=s expert report does not adequately
identify and apply the standard of care and breach of the standard of care as
to Methodist.  Dr. Adams states repeatedly in his report that when a patient
requests a specific doctor, the standard of care requires doctors and hospital
employees to locate and contact that doctor and request his instructions for
the care and treatment of that patient.  According to Dr. Adams, Methodist=s employees
breached the standard of care because, despite Sherman=s repeated
requests, no one attempted to locate or contact Dr. Coselli and request his
instructions for her care.








Methodist contends that the report is
inadequate as to the standard of care and breach because it does not identify
the specific conduct called into question by each type of hospital employee
involved, such as doctors, nurses, or admissions staff.  Methodist argues that
a global standard of care and assertion of breach for all actors is
insufficient as a matter of law.  Methodist is correct that an expert report
may not state a global standard of care without explaining how that standard of
care applies to the health care providers at issue and how they breached it.  See,
e.g., Haddad v. Marroquin, No. 13-07-014-CV, 2007 WL 2429183, at *4
(Tex. App.CCorpus Christi Aug. 29, 2007, pets. denied) (mem.
op.); Doades v. Syed, 94 S.W.3d 664, 671B72 (Tex. App.CSan Antonio 2002,
no pet.).  However, that is not what Dr. Adams=s report does.  Rather,
in his report, Dr. Adams explains that in the context of this specific area of
practiceCthat is, when a
patient requests a specific doctorCthe standard of
care is the same for doctors and hospital staff.  He then opines that the
doctors and hospital staff in this case all breached the standard of care by
failing to attempt to locate and contact Dr. Coselli in response to Sherman=s requests.  There
is nothing inherently impermissible about concluding that different health care
providers owed the same standard of care to Sherman and breached that duty in
the same way.[2] 
See Bennett, 256 S.W.3d at 817 (AAlthough [the
expert]=s opinion for each
defendant is identical, he unquestionably provided an opinion for each
hospital.  That he held each defendant to the same standard of care, found the
same type of breach, and analyzed causation in the same way does not render his
opinion inadequate.@); Sanjar, 252 S.W.3d at 466B67 (affirming
trial court=s refusal to dismiss based on expert report that
applied same standard of care to multiple defendants).  We conclude that Dr.
Adams=s report
sufficiently explained why the standard of care and breach elements were the same
as to all the relevant health care providers.  Therefore, the trial court did
not abuse its discretion in denying Methodist=s motion to
dismiss on this basis, and we overrule Methodist=s second and third
issues.

D.  Causation

In its fourth issue, Methodist argues that
Sherman=s expert report is
also insufficient as to causation.  Dr. Adams opines that the stent is the
ultimate cause of all Sherman=s injuries and that Dr. Coselli would not
have performed stent surgery.  Thus, if Methodist had followed the standard of
care and contacted Dr. Coselli, Sherman would never have received a stent,
thereby avoiding her injuries.  Methodist asserts that this opinion is
speculative and conclusory because there is no basis for concluding what Dr.
Coselli would have actually done and that, at most, any negligence by Methodist
merely created a condition that allowed another=s negligence to
cause an injury.  Methodist stresses that its actions were administrative
rather than treatment-oriented and that it was the allegedly defective
treatment that caused Sherman=s injuries.








An expert report cannot be based on mere
conclusions or speculation.  See Bowie, 79 S.W.3d at 52; Mosely v.
Mundine, 249 S.W.3d 775, 781 (Tex. App.CDallas 2008, no
pet.).  Rather, the expert must explain the basis for his statements and link
his conclusions to the facts.  Bowie, 79 S.W.3d at 52; Sanjar,
252 S.W.3d at 465, 467B68.  Dr. Adams does just that.  He
describes Marfan syndrome and explains why the use of a stent is
contraindicated for Marfan syndrome patients and should not have been used on
Sherman.  Dr. Adams repeatedly states that no reasonable doctor, which
presumably includes Dr. Coselli, would have performed stent surgery under such
circumstances.  That the chain of events leading from Methodist=s actions to
Sherman=s injuries has
many links does not render Dr. Adams=s opinion
insufficient because he explains and supports each step.  See Patel,
237 S.W.3d at 905B06; Farishta v. Tenet Healthsystem
Hosps. Dallas, Inc., 224 S.W.3d 448, 454B55 (Tex. App.CFort Worth 2007,
no pet.).  Methodist complains that Dr. Adams=s opinion is not
based on evidence, such as an affidavit or deposition from Dr. Coselli, stating
exactly what he would have done had he been called when Sherman was
admitted.  Methodist cites no authority that discovery from a fact witness is required
to support an initial expert report under chapter 74.[3] 
The report must provide supported opinions that are sufficient to give the
trial court assurance that the claim has merit.  See Palacios, 46 S.W.3d
at 879; Patel, 237 S.W.3d at 904.  Dr. Adams=s well-supported
conclusions about how a reasonably prudent doctor would have acted under the circumstances
are sufficient to have given the trial court such assurances at this stage in
the case.  That discovery could later prove Dr. Adams wrong is not a basis for
holding that his report is insufficient under chapter 74.  See Sanjar, 252 S.W.3d at 467 n.6; Wissa v.
Voosen, 243 S.W.3d 165, 169B70 (Tex. App.CSan Antonio 2007, pet. denied).  We overrule Methodist=s fourth issue.








E.  Sanctions

In her cross-issue, Sherman requests this
court to sanction Methodist for a frivolous appeal under Texas Rule of
Appellate Procedure 45.  Whether to grant sanctions for a frivolous appeal is a
matter of discretion that this court exercises with prudence and caution and
only after careful deliberation in truly egregious circumstances.  See Goss
v. Houston Cmty. Newspapers, 252 S.W.3d 652, 657 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).  If an appellant=s argument on
appeal fails to convince us but has a reasonable basis in law and constitutes
an informed, good-faith challenge to the trial court=s judgment, sanctions
are not appropriate.  Id.  Although Methodist=s appeal lacks
merit, we conclude that it is not frivolous, and we overrule Sherman=s cross-issue.

                                                   CONCLUSION

The trial court did not abuse its
discretion in denying Methodist=s motion to dismiss based on its
objections to Sherman=s expert=s qualifications
and report.  Having overruled all of Methodist=s issues, we
affirm the trial court=s judgment.

 

 

 

 

/s/      Leslie
B. Yates

Justice

 

 

 

Panel consists of Chief Justice Hedges and Justices Yates and Frost.









[1]  It is this fact that distinguishes this case from
Methodist=s authority, in which the doctor either never stated
the standard of care for the non-physician health care providers at issue or
did not explain the basis for any such knowledge.  See, e.g., Christus
Health SE Tex. v. Broussard, 267 S.W.3d 531, 535B36 (Tex. App.CBeaumont
2008, no pet.); Simonson v. Keppard, 225 S.W.3d 868, 872B73 (Tex. App.CDallas
2007, no pet.); Methodist Health Care Sys. of San Antonio, Ltd. v. Rangel,
No. 04-05-00500-CV, 2005 WL 3445994, at *2B3
(Tex. App.CSan Antonio Dec. 14, 2005, pet. denied) (mem. op.); cf.
Bennett, 256 S.W.3d at 814 (distinguishing Simonson).





[2]  Dr. Adams may be, as Methodists suggests, incorrect
in this conclusion, but whether an expert=s
opinions are correct is an issue for summary judgment, not a motion to dismiss
under chapter 74.  See, e.g., Sanjar, 252 S.W.3d at 467 n.6
(concluding that doctor=s arguments that he did not owe duty to patient as
described in expert report was an issue for summary judgment rather than a
motion to dismiss); Wissa v. Voosen, 243 S.W.3d 165, 169B70 (Tex. App.CSan
Antonio 2007, pet. denied) (same).





[3]  Indeed, discovery is severely limited before the
chapter 74 expert report requirement is met.  See Tex. Civ. Prac. & Rem. Code Ann. ' 71.351(s), (u) (Vernon Supp. 2008); In re Jorden,
249 S.W.3d 416, 418, 420B24 (Tex. 2008) (orig. proceeding); In re Lumsden,
No. 14-09-00271-CV, __ S.W.3d __, 2009 WL 1416140, at *4 (Tex. App.CHouston [14th Dist.] May 21, 2009, orig. proceeding); In
re Huag, 175 S.W.3d 449, 456 (Tex. App.CHouston
[1st Dist.] 2005, no pet.).